TMONCTTRE, P.,
delivered the opinion of the court:
This case depends upon the question, whether the Governor is an officer within the meaning of the twenty-second section of the sixth article of the constitution of the State, which declares, that “judges and all other officers, whether elected or appointed, shall continue to discharge the duties of their respective offices, after their terms of service have expired, until their successors are qualified.”
If this section stood alone, and unaffected by the context, there could not be two opinions as to its meaning. It uses the plainest possible language to embrace all officers, except that it does not mention them all by name. “’Judges” alone are specifically named, no doubt because the provision was made in that part of the constitution which relates, generally, to the “Judiciary Department.” Had it been made in that part which relates to the “Executive Department, ’ ’ the 1 ‘Governor’ ’ would no doubt have been named instead of the “Judges,” and the language would then have been, “the Governor and all other officers, whether elected or appointed, ” &c. The Governor is certainly an officer in the proper and ordinary acceptation of the word; and he is expressly called an officer, and described as holding an office, in the constitution itself. Article V, 1, 3, 4 and 9. There is at least as much reason for including the Governor in the provision in question as any other officer of the government. If it be important that there should always be some person in existence to perform the duties of every office of government, and especially every constitutional office, surely this reason applies with the greatest possible force to that office to which belongs “the chief executive power of the commonwealth. That this was the view of the framers of the constitution is shown by the fact that j they took special care to provide for the I performance of the duties of the office of j Governor in case of his death or failure or inability *to discharge his ! duties during the terjn for which he i was elected. Art. V, § 9. They made no | such provision in regard to any other office 1 (except for the appointment of a clerk pro ¡tempore), leaving that to be done by the Legislature. But in regard to the performance of the duties of all officers, including the Governor, after their terms of service have expired, and until their successors are qualified, ample provision is made by the twenty-second section of the sixth article. This was a natural and proper provision for the case. It is important, as before stated, that there should be some person always ready to perform the duties of very office; and when an incumbent has served out the term for which he was elected or appointed, who can be more suitable than he, as a general rule, to continue to discharge the duties of his office until his successor is qualified? He has been once elected or appointed to the office, and is therefore presumed to be fit for it. He has served out his term, and is therefore presumed to be familiar with its duties.
Now can it be supposed that the framers of the constitution would have used the broad and plain terms used in the section in question without expressly excepting the office of Governor, if they had intended to except it? They were not like an unlearned testator making his will, in extremis and inops concilii, and whose words, therefore, will be indulgently expounded to effectuate his intention. They were selected for their wisdom to do the important work of framing a constitution of government for the State. They had time to do their work with deliberation, and the presumption is that they weighed with care and well understood every word which they used, and felt the importance of expressing their meaning plainly. When, therefore, they declared that ‘ ‘Judges and all other officers, whether elected or appointed, shall continue to discharge the duties of their respective offices,” &c., they must have *known that this plain and comprehensive language, standing alone, embraced the office of Governor, and would be so understood; and they must have seen the necessity of expressly excepting that office, if they did not intend to embrace it in the language used. That they did not expressly make the exception, shows very strongly, if not conclusively, that they intended to embrace the office of Governor.
Such being the plain meaning of the section in question, taken by itself, if there can be anything in the context (short of express words) sufficient to change or restrict this meaning so as to exclude therefrom the office of Governor, surely the evidence of intention ought to be very strong to have that effect. Let us now see what is relied on in the argument to sustain the restricted construction contended for.
It is argued that article V, which relates *552 to the “Executive Department” makes all the provision which was intended to be made in the constitution in regard to the office of Governor, and shows that he was not intended to be embraced in the twenty-second section o.f the sixth article. The only sections of the fifth article which have a material bearing on the subject are the 1st, 8th and 9th, which are as follows:
“1. The chief executive power of this commonwealth shall be vested in a Governor.' He shall hold the office for the term of four years, to commence on the first day of January next succeeding his election, and be ineligible to the same office for the term next succeeding that for which he was elected, and to any other office during his term of service.”
“8. A Dieutenant-Governor shall be elected at the same time, and for the same term as the Governor, and his qualification and the manner of his election in all respects shall be the same.”
*“9. In case of the removal of the Governor from office, or of his death, failure to qualify, resignation, removal from the State, or inability to discharge the powers and duties of the office, the said office, with its compensation, shall devolve upon the Bientenant-Governor; and the 'General Assembly shall provide by law for the discharge of the executive functions in other necessary cases.”
Much stress is laid on the first of these sections, which declares the Governor, after holding the office for the term of four years, to “be ineligible to the same office for the term next succeeding that for which he was elected,” &c., from which an intention is inferred to make him incapable of continuing to discharge the duties of his office after the expiration of his term of 'service. But this is not a well founded inference. The policy of making him ineligible to the same office fór the next succeeding term was to avoid exposing him to the temptation of using means afforded him by his office to secure his re-election to the same office, or his election to another office during his term of service. There was no reason whatever for rendering him incompetent to continue to discharge the duties of his office after the e'xpiration of his term of service and until the qualification of his successors. No policy of the law requires it. He cannot be supposed to have any agency,, official or otherwise, in bringing about the occasion for such continuance. There is not a word in the constitution which either expresses or implies an intention to render him incompetent to continue to discharge the duties of his office on such an emergency. The words, ‘ ‘and be ineligible to the same office for the term next succeeding that for which he was elected,” refer solely to a popular re-election for a full term of service, and not to his continuing, ex officio, when the occasion requires it, to discharge the duties of his office after his term of service has expired, and until his successor is qualified — an occasion which is not likely *often to arise, nor to be of long continuance ; but however often it may arise, or however long it may continue, or whatever maj’ have produced it, the same principle applies to the case. There are other occasions on which a person who maj' have been Governor may have to perform duties of the office during the term succeeding that for which he was elected, and which he would certainly not be incompetent to perform. He might be Cieutenant-Governor, or Secretary of the Commonwealth, or President pro tempore of the Senate, or Speaker of the House of Delegates, in either of which characters he might have to perform such duties in a certain contingency. Const, art. V, l 9; Acts 1857-8, p. 20, ch. 20, {j 17.
But this question has already, in effect, been adjudicated by this court. The constitution declares, that “no person elected for two successive terms to the office of sheriff shall be re-eligible to the same office for the next succeeding term; nor shall he during his term of service,’ or within one year thereafter, be eligible to any political office.” Art. VI, § 31. How here it will be observed, that the same principle of ineligibility is applied to the sheriff as to the Governor, the only difference being, that the former may be elected for two successive terms, while the latter cannot. But that difference does not affect the principle or the question we are now considering. If the ineligibility of a person to the office of . sheriff for the next succeeding term, after having been elected .for two successive terms to the same office, does not take him out of the operation of the twenty-second section of the sixth article, and render him incompetent to continue to discharge the duties of his office, after his two successive terms of office have expired until his successor is qualified, then pari ratione, the ineligibility aforesaid of the Governor will not have that effect, mutatis mutandis, as to him. The question as to the sheriff has been expressly decided by this court. *Commonwealth v. Drewry, &c., 15 Gratt. 1. In that case Drewry was elected for two successive terms to the office of sheriff of Norfolk county, 'and served accordingly, to wit: from the 1st of July, 1852, to 1st July, 18S6. By the act of March 15, 1856, Sess. Acts p. 8, the term of the sheriff was extended from July 1, 1856 to January 1, 1857, which latter was made the day for the commencement of the succeeding term. The incumbent whose term was thus extended was required to give a new official bond. Drewry continued to act as sheriff until January, 1857, although he did not execute the bond required as aforesaid, and although his successor was elected in May, 1856, and executed his official bond and qualified in June following, but did not enter upon his office until January, 1857. This court decided that Drewry held over, after the 1st of July 1856, under the constitution, art. 6, \ 23, which was the same with ? 22 of the present constitution,) and that having collected the State taxes of *553 1856, his sureties in the bond of 1854 were liable for them. This is certainly a strong case, and goes very far to show the force and effect and general operation of the constitutional provision in question. There had been an unbroken connection between the terms of the office of sheriff, the one ending and the other commencing on the 1st of July. The legislature interposed by the act of March, 1856, and broke the connection by fixing on the 1st day of January for the commencement of the official term; thus creating a chasm of six months between Drewry’s second term and the term of his successor. Notwithstanding this, and although his successor actually qualified as early as June, 1856, but did not enter upon the duties of the office until January, 1857, it was decided by this court that he held over after the 1st of July until the 1st of January, under the constitution and that the sureties for his second term were bound for his defaults during the period of his holding over; *and that, too, when the act prolonging his term required him to give a new bond, with which requisition he failed to complju “The constitution” (said Judge Samuels, in whose opinion all the judges but one concurred, and it does not appear that he disagreed to what is here said) 1 ‘of itself required Drewry to continue in the discharge of his duties until his successor was qualified. It directs such continuance without reference to any particular cause of delaj' in the successor, but upon the fact that the delay has occurred; it fixes no limit of time bej’ond which the delay shall not have its effect to prolong the term of the incumbent.” This case seems to be a conclusive answer to the argument founded on the ineligibility of the Governor to the same office for the next succeeding term to that for which he was elected.
It is contended that the first section, having confined the powders of the Governor to the duration of his term, and made him incapable of continuing thereafter to discharge the duties of his office, the 9th section makes full provision for the discharge of the duties of the office, not only in case it should become vacant during his term, but after its expiration, and until his successor is qualified. It is supposed that the concluding words of the section, which direct the legislature to provide by law for the discharge of the executive functions in other necessary cases, refer to all necessary cases not provided for by the preceding part of the section; and that the act of May 29, 1852, entitled “An act providing for the discharge of the executive functions in certain cases,” Sess. Acts p. 28, and the act of March 30, 1858, ch. 20, l 17, Sess. Acts p. 20, make full provision accordingly.
Now the constitution ought to be so construed, if it can reasonably be done, as to give effect to every word which it contains, and especially words of plain and unambiguous import. The construction contended for, as just stated, *is inconsistent with the plain words of the twenty-second section of the sixth article, and restricts them in a most important particular. Those wolds are universal in expression — “Judges and all other officers. ” The construction contended for excepts from their operation the chief executive officer of the Commonwealth. If this construction were unavoidable, there would of course be no help for it. But is it unavoidable? We think not. On the contrary, we think the opposite construction is at least as reasonable, looking alone to the fifth article; but looking to the whole constitution, it is infinitely more reasonable, and therefore to be preferred, because it makes the constitution consistent in all its parts, and gives effect to every word.
Our construction of the constitution on this subject then is this: That under the first section of the fifth article the Governor is to hold his office for the term of four years, for which he was elected; and under the twenty-second section of the sixth article, he is to continue to discharge the duties of his office, after his term of service has expired, until his successor is qualified; and that the ninth section of the fifth article provides only for the case (not provided for by the other two sections) of the removal of the Governor from office, or of his death, failure to qualify, resignation, removal from the State, or inability to discharge the powers and duties of the office, devolving said powers and duties in that case upon the Lieutenant-Governor, and directing the General Assembly to provide by law for the discharge of the executive functions in other necessary cases; that is, cases in which there should be no Lieutenant-Governor in being to discharge the powers and duties of the office. That this was the only necessity for legislative provision in the contemplation of the framers of the constitution is manifest, not only from its terms and whole framework, but also from the action of the Legislature *at its first session after the adoption of the constitution of 1851, of which the present constitution is almost a literal copy. That Legislature, as was truly said in the argument, was composed generally of able men, and in part of some of the members of the convention which framed the constitution, and must be presumed to have understood its meaning. Upon them devolved the important duty of organizing the government under the constitution. The act of May 29, 1852, before referred to, is the only act which they passed in obedience to the requirement of the ninth section of the fifth article before mentioned, and provides for all the cases which they considered necessary under that section. Those cases are only such as may arise in the event that the Lieutenant-Governor, upon whom the office of Governor may devolve as aforesaid, shall be removed from office, or shall die, fail to qualify, resign, remove from the State, or be unable to discharge the powers and duties of the office; in -which event, it was enacted that the Attorney-General, elected by 'the voters of the Commonwealth; *554 or if there be no such Attorney-General, then the President of the Senate pro tem-pore ; or if there be no such President, then the Speaker of the House of Delegates shall discharge the executive functions until there is a Governor or Dieutenant-Governor who can act. By the act of March 30, 1858, before referred to, the Secretary of the Commonwealth is substituted to the place of the Attorney-General under the act of May 29, 1852. No provision has ever been made by law for the important case in which the Governor has served to the end of his term, and his successor is not then qualified. Why? simply and plainly because the case is provided for by that section of the constitution which declares that judges and all other officers, whether elected or appointed, shall continue to discharge the duties of their respective offices, after their *terms of service have expired, until their successors are qualified.
Again, it is argued, that the position in the constitution which is occupied by the section in question — being in that article which relates to the ‘ ‘Judiciary Department” — shows that it was intended to confine the section to officers connected with that department, and therefore to exclude' the office of Governor.
If the words of the section be plain and unmistakable, we must give full effect to them, whatever fault we may find with the taste displayed in their location in the instrument. But really they do not seem to be obnoxious even to this criticism. Where else in the constitution could the provision better have been placed? It is, as we contend, a general provision, relating to all officers, legislative, executive and judicial, for whose election or appointment the constitution provides. The constitution, in the main, is distributed under the three heads of the legislative, executive and judiciary departments, to which all the powers and duties of government belong. The 1st article relates to the “bill of rights,” and contains only two lines. The 2d relates to the “division of power,” and contains but five lines. The 3d relates to the qualification of voters, and contains but four sections. The remaining articles, to wit, the 4th, 5th, and 6th, relate to the legislative, executive and judiciary departments respectively, and in that order. The 4th article, relating to the “legislative department,” contains 38 sections, of which the last seven are under the head of “general provisions.” The 5th article, relating to the “executive department,” contains 19 sections, but no “general provisions.” The 6th and last article relating to the judiciary department, contains 34 sections, of which eleven are under the head of “general provisions,” one of the eleven being the 22d section in question. This article ^certainly embraces subjects which do not belong to the judiciary department more than any other, if as much. It embraces the subject of county officers, including a surveyor, Commissioners of the revenue, overseers of he poor, and also all officers appertaining to the cities and other municipal corporations. These subjects were arranged under the head of the “judiciary department,” no doubt because that is the last department treated of in the frame of the constitution, and was as convenient a location as any other; it not being considered necessary to multiply the number of articles for the purpose of placing these subjects under independent heads. In regard to the subject of the 22d section, that (in our view,) related to all three of these departments, and instead of having a separate section under the head of each of them, referring to the officers belonging to that department only, a single section was embodied in the last article applying to “judges and all other officers,” naming “judges” only because the section was under the head of the “judiciary depártment. ”
If the argument founded on the location of the section in question be a sound one, then not only is the governor excluded from its operation, but also all the officers named under the head of the “executive department,” including the lieutenant-governor, secretary of the commonwealth, treasurer, auditor of public accounts, and members of the board of public works. Can it be possible that the framers of the constitution intended to include none of these important officers of government in the broad terms used in the section? and that, too, when not only those terms literally included them, but there was as much reason’for including them as judges or any other officers.
We believe we have noticed, and we think answered, in the foregoing opinion, all the objections taken in the argument to the construction which we have adopted of the *section of the constitution in question in this case. Our opinion has perhaps been extended to too great length, considering that- we have had no doubt or difficulty in the decision of the question involved; but that question being a constitutional one,, and of importance to the public, we considered it proper to express our opinions fully on the grounds relied on in the argument. The result of the opinion is, that we think it devolves on Governor Peirpoint, under the constitution of the State, to discharge the duties of the office of Governor thereof until his successor is qualified; that the pardon granted by him to the petitioner is a valid -pardon, and that the said petitioner is illegally detained in the custody of the superintendent of the penitentiary. It is therefore ordered that he be discharged therefrom.
The following is the entiw made by the court:
The petition of James Dawhorne, which was presented to the court on yesterday and continued until to-dajr for further consideration, complaining that he is unlawful^ detained in the penitentiary, in the custody of James P. Pendleton, the superintendent thereof, and praying for a writ of habeas corpus, came on this day for further consideration accordingly. The petitioner *555 state that he is confined in the penitentiary for a term yet tmexpired, under a conviction for grand larceny in the county court of Nelson county; that on the 13th day of the present month, January, 1868, he was pardoned by Francis H. Peirpoint, Esq., Governor of the Commonwealth, by letters patent bearing date on that day, and filed with the petition; and that the said superintendent refused to admit the validity of said pardon and discharge the petitioner, because, and only because, the term of office of Governor Peirpoint expired on the 1st day of January, 1868, or the day before, and the said pardon was dated *and issued after that day as aforesaid. The said Pendleton superintendent as aforesaid, by a memorandum annexed to said petition and signed by him, admits that for the reason stated in said petition, and no other, he detained the said petitioner; and he states that as the pardon granted by Governor Peirpoint bears date after his official term had expired, though when no successor to him had qualified, a question had arisen as to the validity of the said pardon, which he the superintendent desired to submit to the determination of this court. Wherefore, it appearing to the court from said petition and memorandum, that there is probable cause to believe that the petitioner is detained as aforesaid without lawful authority, a writ of habeas corpus is awarded him, to the said superintendent to be directed, commanding him forthwith to have the body of the petitioner before this court, together with the day and cause of his capture and detention. And thereupon the petitioner by counsel, and the said superintendent in proper person, agreed in open court to dispense with the actual issuing of the writ and the personal presence of the petitioner in court; that the said memorandum should be regarded as a return to the writ; and that the court should proceed to decide the case upon the said petition and return, in which it is fully presented. And the court, after hearing and considering the arguments of counsel, as well in behalf of the said petitioner upon his petition as in opposition thereto, is of opinion that the Governor is an officer within the true intent and meaning, as well as the literal terms of the 22d section of the sixth article of the constitution of the State, which declares that “Judges and all other officers, whether elected or appointed, shall continue to discharge the duties of their respective offices after their terms of service have expired, until their successors are qualified;” that although Governor Peirpoint’s term of office has expired, it devolves on *him, under the said provision of the constitution, to continue to discharge the duties of his office until his successor is qualified; that as no successor to him has yet qualified, the pardon granted by him to the petitioner as aforesaid is a valid pardon ; and that the said petitioner is illegally detained in the penitentiary and in the custody of the said superintendent. It is therefore ordered that he be discharged therefrom.