Samuels, J.
By the constitution of Virginia, article 6, § 30, it is ordained, amongst other things, that the voters of each county shall elect a sheriff', who shall hold his office for two years. By § 23 of the *4 same article, it is ordained that judges and all other officers, whether elected or appointed, shall continue to discharge the duties of their respective offices after their terms of service have expired, until their successors are qualified. By article 4, § 38, it is ordained that the manner of conducting and making returns of elections, of determining contested elections, and of filling vacancies in office, in cases not specially provided for by the constitution, shall be prescribed by law.
In obedience to the mandates of the constitution, the general assembly enacted the statute of April 22, 1852, ch. 71, p. 64, of Sessions Acts. By the first section of this statute it was enacted, amongst other things, that a sheriff should be elected on the fourth Thursday of May then next, and on the same day in every second year thereafter. By the eighteenth section of the statute, the term of the office of sheriff began on the first day of July next succeeding the election. By the nineteenth section the sheriff, before entering upon the discharge of his duties, was required to take the oaths prescribed by the Code of Virginia, and to give all such official bonds as were then required of him. Under this law John M. Drewry was elected sheriff of Norfolk county on the day named in 1852; and again elected on the same day in the year 1854; and having taken the oaths required by law, and given the bond in which the defendants here are sureties, and which is the subject of controversy in this case, on the first day of July 1854 he was inducted into office as sheriff, and entered upon the discharge of its duties. No successor of Drewry, in his office of sheriff, qualified so as to enter upon the duties of the office on the first day of July 1856, nor at any time before January 1st, 1857. Drewry continued to discharge the duties of his office in so far as to collect the commonwealth’s revenue in his county for the year 1856, the subject of contest in *5 this suit. In this state of things (if nothing else existed) it would seem that Drewry’s term commencing July 1st, 1854, by its original limitation endured to the last day of June 1856, and thereafter, by the provision of the constitution, until his successor qualified.
It is alleged on behalf of the defendants that the action of the general assembly in enacting the statute of March 15, 1856, Sess. Acts, ch. 8, § 2, p. 8, has in some way changed Drewry’s term of office, and of consequence the liability of his sureties, which is coextensive in point of time with his term. This objection I conceive is not well taken, upon the true construction of the constitution. In the partition of power between the three departments of government, the power of making laws is conferred on the general assembly ; some laws they are compelled by mandate to make; other laws they are forbidden to make ; these are the only limits to their powers; all subjects of legislation not affected by mandate, nor by prohibition, are within the discretion of the general assembly. It is conceded by all that the act of April 22,1852, fixing the commencement of the sheriff’s term on the first of July next after his election, was a legitimate exercise of power. It is earnestly insisted, however, that the act of March 15th, 1856, is unconstitutional in fixing the first of January next after the election as the beginning of the sheriff’s term for Drewry’s successor. If we yield to this objection we must hold that the act of April 22, 1852, has in effect become part of the constitution; that it would require the. sovereign authority of the people assembled in convention to change this, a mere act of legislation : that a single exercise of legislative power exhausts and destroys the power. Such was not the intention of the framers of the constitution, nor of the people when they adopted it. The power of legislation over this subject, as over many others, was intended to be exer *6 cised from time to time to meet the exigencies of the public service. There is no prohibition to forbid on the 15th March 1856, an exercise of power because at a previous time, April 22d, 1852, the power had been exercised. If, however, this act of March 15th, 1856, should be held unconstitutional in whole or in part, it is not perceived how the defendants could be relieved by such decision. Drewry was duly elected in May 1854, and duly inducted into office July 1854. Under the constitution and law at that time, there was a possibility that the term of two years might be prolonged until a successor should qualify: and for this whole term, whatever it might be, the sureties were bound.
It was insisted by the defendants, that if the act of March 15th, 1856, was warranted by the constitution, still as Drewry did not give the bond required by that act, the prolongation of the term was without warrant of law. I have already said that the constitution of itself required Drewry to continue in the discharge of his duties until a successor was qualified. It directs such continuance without reference to any particular cause of delay in the successor, but upon the fact that the delay has occurred; it fixes no limit of time beyond which the delay shall not have its effect to prolong the term of the incumbent.
It would be conceded that if a successor, from sickness, casualty, or inability to comply with the requisition to give security, should not qualify, the incumbent would continue in office. If it be admitted that Drewry might have been his own successor for the period between July 1st, 1856, and January 1st, 1857, by giving the bond required by the act of March 1856, yet such bond was not given, and he did not qualify as such successor. I attach no weight to the argument that the general assembly might prolong the office of an incumbent for a long period of time, by postponing the term of his successor. The existence of a power *7 is not to be questioned only because it may be abused. The most salutary powers, plainly granted, may be perverted; yet it would be unreasonable to hold that ■ therefore these powers do not exist. If in any case the general assembly keeping within the letter of its charter, shall yet enact laws from sinister motives, it might be difficult for the courts to interfere. But any speculation as to what the court could do in such a case, would be disrespectful to the general assembly; as there is nothing to justify any suspicion of improper motive in passing the law of March 1856. On the contrary, the law, as it stood prior to that time, was inconvenient and of doubtful construction. The commissioners of the revenue were required by law to deliver their books on the 15th of June to the sheriff; at the end of every second year the sheriff went out of office on the 30th of June, if a successor qualified ; a sheriff had no authority to receive voluntary payment of taxes before the 1st of July; nor authority to distrain for taxes until a later day. If it should be held that the outgoing sheriff was chargeable with the duty of receiving and accounting for taxes, he would be charged with a duty beginning only after he was out of office; if the incoming sheriff might be charged with the duty of receiving the books from commissioners of the revenue on the 15th of June, this would be a duty existing before the term of office commenced. It would be improper to express any opinion whether the outgoing or the incoming sheriff should be chargeable with the duty of collecting the taxes when the office passed from the one to the other on the first of July; the subject is referred to solely for the purpose of showing the propriety of removing all doubt; as is done by the act of March 1856. If the beginning of the term of Butt the successor of Drewry was lawfully postponed, then the constitution required Drewry the incumbent to continue to discharge its duties. There is nothing *8 in the constitution to make this case an exception from the general terms of that instrument; and we are not justified in interpolating at the end of section 23, article 6, an addition to this effect, “ but if the qualification of a successor in the office of sheriff shall be postponed by the action of the general assembly, then the sheriff incumbent shall not continue to discharge the duties of his office beyond his term of two years.”
It has been said that the act of March 1856, § 2, is in violation of article 4, section 16 of the constitution, which is in these words : “ No law shall embrace more than one object, which shall be expressed in its title; nor shall any law be revived or amended by reference to its title; but the act revived or amended shall be re-enacted and published at length.” It may be difficult to declare the effect of this provision, if at any time hereafter an act of assembly shall be found in conflict therewith; it is enough for the purposes of this case to say that no such conflict exists therein; the act is in reference to a single object, to wit, county organization. The constitution itself, article 6, § 30, treats the organization of counties as one object, under the head of county officers;” and amongst these are named “ a sheriff” and “ commissioners of the revenue.” A large and important part of the duties of either office is performed in co-operation with the other. If it should be held that the common duties, so far as they are devolved on commissioners, must be prescribed by one series of laws, and so far as devolved on the sheriff, in another series of laws, we should fall upon the inconvenience guarded against by the second clause of article 4, $ 16; that is, the inconvenience of referring to different laws for a connected reading of the law on one subject. It is said, moreover, that the law in question is in conflict with the second clause of article 4, § 16, which is in these words: “ Nor shall any law be revived or amended by *9 reference to its title, but the act revived or amended shall be re-enacted and published at length.” The act in question does not revive any law whatever; does it amend any law: it neither revives nor amends any law by reference to its title, but is complete in itself, and perfectly intelligible, without reference to any thing beyond its own terms. By section 18 of the act of March 1856, all laws in conflict therewith are repealed.
In the events which have happened, touching the succession to the sheriffalty in Norfolk county, it must be said that the act of March 1856 was an ineffectual attempt to fill the office from July 1, 1856 to January 1, 1857 ; Drewry failed to give the bond required, and no other provision was made, but the subject was left to the operation of a general provision of the constitution.
I have thus, in deference to the learned counsel who argued the case, considered the several objections to the act of March 1856, on the ground of its alleged unconstitutionality; but I have not been able to perceive how their clients could be relieved if the act should be put out of the case; the provision of the law of April 22d, 1852, in force when Drewry was elected and inducted into office, fixed his term of two years from July 1, 1854, to July 1856; the constitution prolonged it until a successor qualified; which in our case was January 1st, 1857. Their bond bound them for Drewry’s official acts whilst in office.
The record does not show for what amount the defendants here are liable. As the court below decided that they were not liable at all for Drewry’s default, they were not concerned to contest the question as to the amount of that default, nor is its amount shown by the record.
The judgment should be reversed with costs, and the cause remanded for the purpose of having the amount *10 of Drewry’s default ascertained, and of rendering a judgment according to law.
Allen, P., and Daniel and Lee, Js. concurred in the opinion of Samuels, J.
Moncure, J. dissented.
Judgment reversed.