# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

## R. W. MASSIE v. H. B. PARRISH, ET ALS.

### December 18, 1924.

1. ISSUE OUT OF CHANCERY—*When Ordered—Discretion of Court.*—The directing an issue out of chancery rests within the sound judicial discretion of the chancellor. The presumptions of course are that the chancellor below properly exercised the discretion vested in him. He is the keeper of his own conscience and where he has in substance said that the evidence between persons of equal credit, and who have had equal opportunities for information, is so balanced that it is difficult for him to reach a conclusion, and that he wishes the assistance of a jury and the benefits which flow from cross-examination in open court, where witnesses can be both seen and heard, he is entitled to the presumption of fair judgment that prevails until error is shown.

2. ISSUE OUT OF CHANCERY—*Judgment upon the Verdict—Verdict Supported by the Evidence—Case at Bar.*—In the instant case the point at issue was whether P. bought certain orchard property for himself or whether he bought it for himself and one M. The testimony was in irreconcilable conflict and the court referred the question to a jury who found that P. bought this property for himself alone.

   *Held:* That granting that the chancellor was not bound by the verdict to the extent that he would have been in a common law action, the evidence was, nevertheless, ample to justify its adoption.

3. PAROL TRUST IN LAND—*Burden of Proof.*—When one claims that a party who purchased and paid for land of which he was in possession for years bought it on their joint account, the burden is on him of showing his interest by clear, cogent and convincing evidence.

4. PAROL TRUST IN LAND—*Evidence—Record in a Prior Suit.*—Where one claims that land bought and paid for by another was bought by such other on their joint account, the record of a prior suit regarding the same land in which claimant had filed a petition is admissible to show that claimant at the time of the institution of the prior suit made no claim to this real estate, and this in proceedings instituted and conducted by him through his counsel. In these circumstances it is proper that this fact should have been presented to the jury and to the court as evidence for what it was worth. It was not binding but it was competent evidence.

5. Parol Trust in Law—*Burden of Proof.*—When one alleges that another, who bought and paid for an orchard, purchased on the joint account of himself and such other, the burden is on him to show by a preponderance of evidence that the purchase was on such joint account.

6. Contracts—*Meeting of Minds.*—In order to constitute a contract, the minds of the parties thereto must meet and come together on every essential element thereof.

7. Instructions—*Evidence to Support.*—Instructions should not be given where there is no evidence to support them.

8. Instructions—*Matters Covered by Other Instructions.*—Instructions should not be given if the matters dealt with have been covered by other instructions.

9. Contracts—*Admissions—Change in Terms—Burden of Proof.*—When a contract is admitted and afterwards denied, one who would recover under it must prove it, and the value of the admission as evidence is for the jury; but when a contract is admitted and the defendant says that he is not liable thereon under all of its original terms, because some of them have been changed, he assumes the burden of showing what the changes are.

10. Frauds, Statute of—*Real Property—Partnership.*—In this State there is nothing peculiar to the law of partnership which relieves dealings in land from the operation of the statute unless it is bought for speculative purposes or with partnership funds, or came to an existing partnership in the due course of its business as a going concern, and certainly it is not the law that an agreement for the purchase of land and the sale of an interest therein by one partner to another in a partnership thereafter to be formed, is not within the statute.

11. Parol Trust in Real Estate—*Validity—Essentials.*—While it is competent in this State to establish by parol an express trust in real estate, yet it is essential that the following conditions be shown to exist: (1). The parol agreement relied on must be certain and definite in its terms; (2) the acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved; and (3) the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation. These requisites must concur before a court of equity will decree specific performance; until acts are alleged, which of themselves imply the existence of such a contract, parol evidence to show its terms is inadmissible.

Appeal from a decree of the Circuit Court of Nelson county. Decree for defendant. Petitioner appeals.

*Affirmed.*

The opinion states the case.

*Caskie & Caskie* and *Scott & Buchanan,* for the appellant.

*J. T. Coleman, Jr.,* and *S.. B. & Robert Whitehead,* for the appellees.

Holt, J., delivered the opinion of the court.

On November 13, 1904, P. C. Massie, Jr., a resident of the State of Alabama, died there testate, leaving to survive him a widow, Bessie K. Massie, and two children, Joel W. and Jane. At the time of his death he was the owner of two tracts of orchard land in Nelson county, Virginia; one of them known as Poverty Point contained 181 acres, the other as Pharsalia, contained 48 146/160 acres. This testator devised his whole estate to his widow, who did not undertake to manage this property herself, but through a brother-in-law, Withers Massie. He rented Poverty Point orchard to H. B. Parrish, who continued as tenant until his death late in 1913. Upon Massie's death, R.. W. Massie, another brother-in-law of Mrs. Massie, took over the management of her affairs. These orchards were deteriorating and R. W. Massie, agent for Mrs. Bessie K. Massie, undertook their sale. Mr. Beasley, a real estate agent buying for a client, offered $8,000.00 for the Poverty Point orchard, less commissions. It was then that R. W. Massie took up with Parrish the matter of a sale to him, and finally, under verbal contract, did sell to him the Poverty Point orchard for $8,000.00. Whether this sale was absolute, or on joint account, is the question at issue here. The transaction itself took place early in 1914. Parrish, who was already in possession as tenant, con-

tinued in possession as owner and made on account of his purchase the following payments:

November 1, 1914, $500.00; November 1, 1915, $2,000.00; November 1, 1917, $1,000.00; November 1, 1918, $1,000.00; November 1, 1919, $3,000.00.

On October 6, 1920, Massie sent him a statement showing a balance due on account of $2,441.19. This sum with interest, amounting in all to $2,444.84, was paid by Parrish into court on November 20, 1920, and has been accepted by all parties in interest as balance due in full.

As time went on Parrish became anxious to complete the transaction and to secure a deed, and so informed Massie. Note was then taken for the first time of the fact that the commissioner's deed to P. C. Massie, Jr., conveying this Poverty Point orchard, alloted to him in the settlement of his father's estate, was probably lost and had not been recorded, and of the further fact that the daughter, Jane, had been born after the execution of her father's will, and that under the provisions of section 2528 of the Code of 1887 it was inoperative as to her.

Thereupon R. W. Massie, as agent for Mrs. Massie, employed counsel to adjust the rights of the parties and to clear title. A chancery suit for that purpose was instituted in the Circuit Court of Nelson county in March, 1920. Bessie K. Massie was plaintiff and Joel W. and Jane Massie, her children, defendants. The bill among other things stated that the plaintiff had received an offer of $8,000.00 from H. B. Parrish for the Poverty Point orchard and prayed that she be permitted to accept it. At the September term of said court the prayer of the bill was granted, the sale confirmed and a commissioner appointed to collect the amount due by reason thereof and to execute to the purchaser a deed.

At the November term, 1920, H. B. Parrish obtained leave to file, and did file, a petition in said suit in which he set out the fact that the sale which the bill represented as being then made, had been in fact made in 1914, that large payments had been made thereon and asked that his interests be duly protected. At the July term of this court, 1921, R. W. Massie by permission of court filed his petition in this suit in which he asked that he be declared to be a one-half owner of the Poverty Point orchard, and set out that the same had been purchased by Parrish for their joint account. To this petition Parrish demurred. The demurrer was overruled and Parrish was given leave to answer and did answer at the November term of said court, 1921. At the September term thereof, 1922, an issue out of chancery was awarded "to determine whether H. B. Parrish bought the Poverty Point orchard for himself and is entitled to the entire right in and possession thereof, or whether the said Parrish bought the said orchard for himself and R. W. Massie under a verbal agreement." This matter was submitted to a jury on January 11, 1923. Its verdict was: "We, the jury, find that H. B. Parrish bought the Poverty Point orchard for himself and is entitled to the entire right in and possession thereof." That verdict was confirmed by the court and it is this which we are asked to pass upon on appeal.

The issues in said suit under the rules governing chancery practice matured in due season and the evidence bearing thereon in the form of depositions and exhibits was duly presented. After examination the chancellor was of opinion that there was such conflict in the testimony that it was proper that he have the aid and advice of a jury to satisfy his conscience.

R. W. Massie testifies in substance that he was anxious to save the commissions which Mrs. Massie

would have had to pay in the event that this orchard was sold through Beasley, and that he then took up with Parrish the sale at $8,000.00. He says that Parrish at first was unwilling to undertake so large a matter, but he urged acceptance and represented to him as inducement that he would advance the money necessary to put the orchard in condition; that he would give such time for payments as would enable him to make them out of the profits of the orchard, and finally that should Mrs. Massie become impatient he would himself pay any balance that might be due on account of this purchase; and that under these inducements Parrish then and there closed the bargain. Letters were introduced tending to show that Massie, during the year 1914, was actually interested in the care of this orchard and in the sale of its products. It further appears that he purchased supplies therefor and made a number of advancements to Parrish.

J. P. Lea testifies that he heard Mr. Parrish on one occasion say that the Virginia Land and Fruit Company held an option on this orchard, but that he had gotten no deed therefor and could not give a deed because others were interested with him.

Parrish did give an option for $17,500.00, foreclosure of which seemed imminent. This he mentioned to Massie, who, thereupon, after conference in his presence and with his consent, wrote the following letter:

"November 17, 1919.

"Mr. J. C. Clarkson,

"Abingdon, Virginia.

"Dear Sir:

"Mr. Parrish came up this morning and wanted a deed to the land near Massie's mill. A deed cannot be made to him for this land at present. First, the deed

conveying the land to P. C. Massie, Jr., was lost and never recorded. Mr. Parrish has possession of this land under a verbal agreement with me as agent for P. C. Massie, Jr., by which the rents of the orchard were to be applied on the purchase of the land, and a further agreement that I am to have half interest in this property by paying one-half of the purchase price. I do not wish to sell my interest, and am unwilling to dispose of it at present."

It is also admitted by Parrish that the preliminary negotiations under which he purchased were substantially those detailed by Massie. This then is Massie's case. His own statement; the correspondence; his dealings relative to the orchard; the statement of Mr. Lea and the Clarkson letter, together with Parrish's admissions. Massie further states that his failure to reduce the contract to writing, or to demand a settlement earlier, was due to his entire confidence in Parrish.

On behalf of Parrish we have his own statement denying that there was any contract with Massie giving him any interest in this orchard. He admits that Massie did make advancements for supplies amounting to something more than $600.00, but shows that this was repaid in cash. He further states a part of the supplies so furnished did not come to the Poverty Point orchard at all and that he has, himself, paid every dollar of the purchase price, and in so doing used more than $2,000.00 which came from private and unrelated sources. Dealing with the Clarkson letter he charges that in its last analysis it grew out of the fact of his inability to live up to the option he had given, which in turn was due to Massie's inability to secure for him the deed to the property he had purchased and that because of this he had himself to pay $150.00. Attention is called to the fact that no settlement was demanded by Massie for more

than six years and then not until the property had doubled in value and had been about paid for in full. It also appears in evidence that before any controversy arose between these parties Parrish sold a small part of this land as his own. It further appears that at times Massie purchased apples from him and paid for them in cash and that replying to Beasley's repeated efforts to purchase, said he had sold this land to Parrish and that it was no longer on the market. He wrote to Mr. Gaines that Mrs. Massie had sold this orchard and in substance told him that if he wished a right-of-way through it he would have to deal with Parrish. He told Mr. Miller that he had sold it and that he believed Parrish could pay for it.

So to restate Parrish's contention we have his own statement; we have the manner in which he dealt with the property; we have Massie's delay in the assertion of any rights, and we have Massie's statement, made on more than one occasion, to the effect that he had sold this orchard to Parrish; we have the fact that the payments made bear no relation to any definite proportion of the profits from the operation of the orchard such as it is claimed the contract calls for, and finally, remembering the law of probabilities, Parrish would have been slow to close such a contract until its terms were made known to and ratified by Mrs. Massie.

When we remember that these litigants are people of standing who for many years enjoyed the confidence and esteem of each other, it is small wonder that the chancellor wanted help.

[1] Be it observed that this is not a case in which an issue was ordered under the statute. It was not ordered upon affidavits but after the case had been matured and submitted to the judge for decision. And it is also to be noted that no protest appears to have been made to this

step when taken. It is entirely true that the decree directing the issue was not by consent formally given; but it is also true that it is charged and not denied that no objection to it was suggested. When are issues ordered?

"Where there was contradictory evidence between persons of equal credit, who had equal opportunities for information, and the evidence was so equally balanced on both sides that it became doubtful which scale preponderated, an issue was in general directed, in order that the court might be satisfied, by the verdict of a jury, of the truth or falsehood of the facts controverted; but if the court was able to come to a conclusion satisfactory to its mind, an issue was not directed, however conflicting the evidence might be." 2 Daniel's Chancery Practice, 1072.

"Whether an issue will be directed is a matter of discretion which must be exercised upon sound principles of reason and justice, subject to the supervision of the appellate court. While the court often directs an issue, when the evidence is contradictory, so as to render an open cross-examination of the witnesses proper, yet it does not follow that an issue is necessary and proper in every case where the evidence happens to be conflicting; and the court is not bound, on that mere ground, to direct an issue, but may judge of the weight of evidence, and if its conscience is satisfied, may decide without a jury." 2 Barton's Chancery Practice, 888.

"While a court of equity has the right to order, in a proper case, one or more issues, or any material fact in issue, to be tried by a jury, the matter is discretionary with the court. It is not, however, a mere arbitrary discretion, but a sound discretion to be exercised upon the principles of reason and justice, one which may be reviewed upon appeal, and the appellate court will de-

termine for itself whether in any case such discretion has been properly exercised." Hogg's Equity Pro., section 689.

"While directing an issue to be tried by a jury is a matter of discretion with a court of equity, it is not arbitrary discretion but one to be exercised upon sound principles of reason and justice. A mistake in its exercise is just ground of appeal, and the appellate court will determine whether or not it has been properly exercised in a given case. It is error to direct issue when it should not have been exercised, and it is equal error to fail to direct one when it should have been directed. The object of the issue is to inform the conscience of the chancellor, and for this purpose he may direct it though not requested by either party." *Catron* v. *Hardware Co.*, 123 Va. 380, 96 S. E. 853.

It is not necessary to multiply authorities. They are unanimous to the effect that the matter is one resting within the sound judicial discretion of the court. No two cases are alike; however, this in judgment and the case of *Hook* v. *Hook*, 126 Va. 249, 101 S. E. 223, have much in common. Lillian Hook bought at public auction a farm which had belonged to her father. Her brother, A. J. Hook, claimed, notwithstanding the admitted fact that this property was purchased by his sister and deeded to her, that he was the beneficial owner of it, subject to the repayment, by him, to her, of certain monies which he offered to pay. In other words, he claimed that she held the property in trust for him, just as it is in substance here claimed that this property in the hands of Parrish is impressed with a trust for the benefit of Massie. Conflict in the evidence of Hook and his sister could not be more direct than that between Massie and Parrish. The *Hook Case* was submitted to the court for decision. No

issue was suggested. It was elaborately argued and in due course decided by the chancellor. His judgment was in writing. Our Court of Appeals said that in these circumstances the chancellor should, of his own motion, have ordered an issue out of chancery and held that this failure to do so was error.

The presumptions of course are that the chancellor below properly exercised the discretion vested in him. He is the keeper of his own conscience and where he has in substance said that the evidence between persons of equal credit, and who have had equal opportunities for information, is so balanced that it is difficult for him to reach a conclusion, and that he wishes the assistance of a jury and the benefits which flow from cross-examination in open court, where witnesses can be both seen and heard, he is entitled to the presumption of fair judgment that prevails until error is shown. In this case no abuse of the discretion vested in him has been shown and this assignment of error must be overruled.

[2, 3] The sixth assignment of error is next dealt with in the petition for appeal and will be considered here in the order there presented. It is said that the court should have entered judgment for Massie notwithstanding the verdict of the jury. The evidence before the jury did not differ substantially from that set out in the depositions. Enough has already been said to show irreconcilable conflict. This taken in conjunction with the fact that Parrish was in possession and had for many years exercised openly every right of ownership, and had himself paid for this orchard, put upon Massie the burden of showing his interest therein by evidence clear, cogent and convincing. He cannot claim more than a conflict in evidence. Granting that the chancellor was not bound by the verdict to the extent that he would have been in a common law action, evidence was, never-

theless, ample to justify its adoption. This assignment of error is without merit.

The petition next assigned as error:

[4] "The action of the court in allowing the attorney for H. B. Parrish to read to the jury the decree of September term, 1920, as set out in bills of exceptions Nos. 1 and 5; the report of commissioner to the May term, 1920, as set out in bill of exception No. 3; and the deposition of Bland Massie, taken on the original bill, as set out in bill of exception No. 4. All of these rulings involve the same principle and may be considered together."

The evidence discloses that R. W. Massie, as agent for Mrs. Bessie K. Massie, employed an attorney to institute suit, the purpose of which was to perfect title to and to ratify the sales of said two orchard properties. At the same time he advised the attorney when the deed to Parrish was prepared to prepare one from Parrish to him conveying a one-half interest in Poverty Point orchard. When counsel, who was appointed commissioner for the purpose, came to collect the amount due from Parrish he discovered that a large part of this purchase had already been paid. This fact was reported to the court to the end that the rights of all parties in interest might be marshalled and protected. It was in this suit that Parrish filed a petition setting up his interests as he saw them, and in it also R. W. Massie filed his petition in which he set up his rights as he conceived them to exist. We have already dealt with the results which followed from this litigation. All that counsel knew about matters set up in the bill or in R. W. Massie's petition must of necessity have been derived from R. W. Massie, and the record was therefore introduced to show that R. W. Massie, the petitioner, at the time of the institution of the suit

made no claim to this real estate, and this in proceed-ings instituted and conducted by him through his coun-sel. In these circumstances it is proper that this fact should have been presented to the jury and to the court as evidence for what it was worth. Of course it was not binding but it was competent evidence. No error was committed in its admission.

The next error assigned is the action of the court in giving instructions 1 and 3 for H. B. Parrish. They are:

[5, 6] "1. The court instructs the jury that the bur-den is on R. W. Massie to prove by a preponderance of the evidence that H. B. Parrish purchased the Pov-erty Point orchard for himself and the said R. W. Massie jointly; and unless they believe that the said R. W. Massie has carried this burden, they must find for the defendant, H. B. Parrish.

"3. The court instructs the jury that in order to con-stitute a contract, the minds of the parties thereto must meet and come together on every essential element thereof; and, therefore, even though they may believe from the evidence that R. W. Massie thought that H. B. Parrish was buying the Poverty Point orchard for himself and the said Massie jointly, yet if they believe that the said Parrish did not so concur, they must find for the said Parrish on the issue joined."

We see nothing wrong with these instructions. They present elementary propositions of law. This assign-ment is without merit.

Plaintiff next assigns as error the action of the court in refusing to give instructions B and C asked for by petitioner. These instructions are as follows:

"B. The court instructs the jury that while burden is on the plaintiff to establish his case by a preponderance of evidence, yet if you believe from the evidence that

the defendant, Parrish, admitted that the contract was originally made for the purchase of the orchard jointly for himself and the plaintiff and was afterwards changed, then the burden is on the defendant, Parrish, to prove such change.

"C. The court instructs the jury that while the burden is on the plaintiff to establish his case by a preponderance of the evidence, yet if they believe from the evidence that the defendant, Parrish, admitted that the contract was originally made for the purchase of the orchard jointly for himself and the plaintiff, and was afterwards changed, the burden of satisfying the jury that such change was made rests on said Parrish."

[7, 8] It is not necessary to enter into any discussion of burden of proof, weight of evidences and shifting presumptions, for these instructions certainly should not have been given unless there was evidence to support them, and this without regard to the correctness of the rules of law therein laid down. And they should not have been given if the matters dealt with there had been covered by other instructions. The execution of the contract set up by Massie in his petition was fully and fairly submitted to the jury. These instructions go beyond this; they said to the jury in substance that there was evidence in the record tending to show not only that Parrish had admitted the execution of the contract, a fair matter for the jury's consideration, but that he was now claiming under some modification thereof consented to by the parties, that his position was one of confession and avoidance. The evidence relied upon deals with the original contract. A fair reading of it can lead to no other conclusion. This is Massie's own statement, a verdict based upon any other conception would have been based upon a misconception.

[9] When a contract is admitted and afterwards denied, one who would recover under it must prove it, and the value of the admission as evidence is for the jury; but when a contract is admitted and the defendant says that he is not liable thereon under all of its original terms, because some of them have been changed, he assumes the burden of showing what the changes are.

It was proper and necessary to instruct the jury on the primary rights of the parties and this was done, but it would have been misleading and prejudicial to have so framed an instruction to them as to leave them under the impression that Parrish admitted the contract as set up by Massie, but denied liability thereunder because of some change afterwards consented to by the parties.

The action of the court in dismissing the petition and entering final judgment for Parrish has already been considered. We have not undertaken to deal with the assignments of error in their numerical order, but have followed that plan adopted by the petitioner.

[10] In a cross-assignment of error it is claimed on behalf of Parrish that the contract set up in Massie's petition is void because of the provisions of the statute of frauds. It would be futile to undertake to reconcile the authorities dealing with this subject in its relation to the law of partnership, and it would be an endless task to attempt to cite them.

An examination of them leads us to the conclusion that in this State there is nothing peculiar to the law of partnership which relieves dealings in land from the operation of the statute unless it is bought for speculative purposes, or with partnership fund, or came to an existing partnership in the due course of its business as a going concern. *Henderson* v. *Hudson*, 1 Munf. (15 Va.), 510; *Walker* v. *Herring*, 21 Gratt. (62 Va.) 678,

8 Am. Rep. 616; *Burgwyn* v. *Jones*, 113 Va. 511, 75 S. E. 188, 41 L. R. A. (N. S.) 120, Ann. Cas. 1913-E, 564; *Atlantic Coast Realty Company* v. *Townsend*, 124 Va. 490, 98 S. E. 684. See also the very interesting case of *Schultz* v. *Waldons*, 60 N. J. Eq. 71, 47 Atl. 187. Opinion by Chancellor Pitney, afterwards Mr. Justice Pitney of the Supreme Court.

And certainly we have not gone to the extent of holding that an agreement for the purchase of land and the sale of an interest therein by one partner to another, in a partnership thereafter to be formed, is not within the statutes. *Burgwyn* v. *Jones, supra.*

[11] It is said, however, that independent of all such considerations or of any laws peculiar to partnerships, it is competent in this State to establish by parol an express trust in real estate. This was so held in *Young* v. *Holland*, 117 Va. 433, 84 S. E. 637, where it was pointed out that the seventh and eighth sections of the English statute of frauds dealing therewith were never adopted in Virginia. This holding is reaffirmed in *Shield* v. *Adkins*, 117 Va. 616, 85 S. E. 492.

When sifted down we find that Massie is claiming to be the beneficiary of an express trust and is asking that it be specifically performed.

*Shield* v. *Adkins, supra*, is an instructive case on this point. The conditions which lead up to the purchase of the land in many respects are those which obtain in the instant case. The court there said in substance that the plaintiff could obtain relief and that it would have enforced the preliminary parol agreement for the purchase of this land had the following elementary and essential conditions been shown to exist:

"(1). The parol agreement relied on must be certain and definite in its terms; (2) the acts proved in part performance must refer to, result from, or be made in

pursuance of the agreement proved; and (3) the agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation.    These requisites must concur before a court of equity will decree specific performance.   *   *   * Until acts are alleged, which of themselves imply the existence of such a contract, parol evidence to show its terms is inadmissible."

No attempt has been made to comply with these requirements save to show that there was a definite agreement.    Here, just as in *Shield* v. *Adkins*, *supra*, neither in the pleading nor in the evidence, is there anything which even by indirection measures up to the second and third prerequisites there pointed out.    We are dealing with the case as it comes to us in the record.

Massie paid no part of the purchase price and he was never in possession.    To assume that the possession of Parrish was the possession of a partner and inured to his benefit, or that the orchard was paid for from its proceeds and, therefore, paid for out of partnership funds, is to assume the very matter in issue and is to reason in a circle.    *Hook* v. *Hook*, 126 Va. 294, 101 S. E. 223, is cited and relied upon.    In that case, the *cestui que trust* was himself in possession and before litigation began had paid a substantial part of the purchase price.

It is sometimes helpful to view problems from different angles of approach.    If the selling price of this property had been $17,500.00, and if it had decreased in value until Parrish under stress was about to resell for $8,000.00, any court on this record would have been slow to decree relief against Massie.    It could not be done.

For the foregoing reasons we are of opinion this cross-assignment of error must be sustained and the decree of the court below must be affirmed.

*Affirmed.*