David R. FORWARD, Plaintiff,

v.

Michael H. BEUCLER, Keith L. Sterling, Curtis M. Coward, and KARM, Inc. and Llanfair, Inc., as partners in Radnor Development Joint Venture, a Texas joint venture, Defendants.

Civ. A. No. 88–0448–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 23, 1988.

Earl C. Dudley, Jr., David N. Webster and James Sottile, IV, Nussbaum, Owen & Webster, Washington, D.C., for plaintiff.

George W. Campbell, Jr., Arlington, Va., for defendant Coward.

Michael McGettigan, Murphy, McGettigan & West, P.C., Alexandria, Va., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

This diversity dispute among participants in a Virginia partnership raises the novel question of whether an oral promise to transfer a limited partnership interest is within the statute of frauds where the sole partnership asset is real property. Defendants assert that the statute of frauds bars enforceability of the oral promise. They seek partial summary judgment solely on those aspects of plaintiff's claims relating to this promise.[1] Though the novel question presented appears, at first glance, to be complex, in fact, it has a straightforward answer, one dictated by the controlling Virginia statute.

The *dramatis personae* and their byzantine relationships in this matter are as follows: Plaintiff, the allegedly aggrieved partner, is a resident of the District of Columbia. On April 15, 1988, he filed suit against three Virginia residents (Michael Beucler, Keith Sterling, and Curtis Coward), two Texas corporations (KARM, Inc. or "KARM" and Llanfair, Inc., or "Llanfair"), and a Texas joint venture (Radnor Development Joint Venture or "Radnor"). The individual defendants—Beucler, Sterling, and Coward—were plaintiff's former partners in BCFS Partners ("BCFS"), a four-person Virginia partnership. The partnership's general purpose was to purchase, sell, and develop real estate in the northern Virginia area.[2] The corporate

---

1. Specifically, defendants seek summary judgment on those aspects of Counts I, II, and III of plaintiff's Complaint that stem from defendants' alleged promise to assign defendant Radnor's interest in Prince William I, a limited partnership, to BCFS Partners ("BCFS"). Count I asserts breach of contract by defendants Beucler, Sterling, KARM, and Llanfair for their failure to assign their interests in Prince William I (which held the contract right to the disputed real estate) as orally promised. Count II charges that, by these and other actions, defendants Beucler, Sterling, and Coward breached the fiduciary duty they owed plaintiff as his partners in the BCFS partnership. Count III seeks an accounting and the dissolution of BCFS as a result of these failures of defendants. In effect, defendants seek summary judgment on Count I in full, and on those aspects of Counts II and III that specifically relate to the alleged promises. Counts IV and V are not at issue in defendants' partial summary judgment motion.

2. The existence of the partnership, itself created orally, is not disputed for purposes of the instant motion.

and joint venture defendants were wholly controlled, in effect, by defendants Beucler and/or Sterling. Defendants Beucler and Sterling served as vice-presidents of KARM[3] and Llanfair,[4] respectively. KARM and Llanfair were, in turn, the sole partners of Radnor, a joint venture.

The genesis of plaintiff's claim was an intricate series of transactions between these individual and corporate players, the relevant aspects of which are related herein.[5] In October 1986, Radnor entered into an $8.9 million contract to purchase a ninety-five-acre parcel of land in Prince William County, Virginia, known as the "Banks Property." Radnor, through Beucler and Sterling, had assigned its contract right to purchase the Banks Property to a Virginia limited partnership, Prince William Associates I ("Prince William I").[6] At that time, Radnor owned 90.6% interest in Prince William I as a limited partner and 1% interest as a general partner.[7] Apparently, Beucler and Sterling, on behalf of Radnor, experienced difficulty in raising sufficient funds to purchase the Banks Property. They sought other investors. To that end, they agreed on August 10, 1987, to form a partnership with plaintiff and Curtis Coward,[8] the BCFS Partners (or "BCFS"). The Banks Property was to be their first and, at that time, their only venture. According to plaintiff, Beucler and Sterling then made the oral promise that is the genesis of this dispute: they promised to cause Radnor to transfer Radnor's interest in Prince William I to BCFS.[9] In return, plaintiff promised to help manage, raise outside funds for, and contribute a substantial sum of his own money to Prince William I. Plaintiff further agreed to buy an interest in a second limited partnership owned by Beucler and Sterling. BCFS, in turn, was supposed to reimburse Radnor and the BCFS partners for any money they contributed through BCFS to the Banks contract. The funds for reimbursement were to come from the proceeds of the sale of any interests in Prince William I or the Banks contract. The BCFS partners also established a corporation, known as Regent Properties, Inc. ("Regent"), to develop and manage Prince William I's interest in the Banks Property and other properties subsequently acquired. Plaintiff was named President of Regent. Defendant Curtis Coward, an attorney, allegedly agreed to prepare the legal documents necessary to effectuate these oral agreements.

What followed were a series of complicated transactions, the end result being that Radnor's interests in Prince William I were never transferred to BCFS. Instead, in January 1988, defendants allegedly tried to buy out plaintiff's interest in Regent and to limit his participation in Prince William I. Subsequently, plaintiff was excluded from any participation in the business of BCFS and Regent. Defendants also removed plaintiff from his position as President of Regent and formally terminated Regent's relationship with Radnor and Prince William I.

---

**3.** KARM's sole shareholder is the Beucler Children's Trust. Defendant Beucler controls KARM. KARM, in turn, is the managing partner of defendant Radnor.

**4.** Defendant Llanfair's sole shareholder is the Sterling Children's Trust. Defendant Sterling controls Llanfair, and Llanfair is a general partner of defendant Radnor.

**5.** For the purposes of this motion, defendants accepted all facts alleged by plaintiff in his Complaint and affidavits. This matter is, therefore, ripe for disposition by summary judgment. Rule 56, Fed.R.Civ.P. This is not to say, however, that many facts are not hotly disputed; they are. But resolution of these disputes is not essential to the disposition of this motion.

**6.** According to the parties, the sole assets of Prince William I are an equitable interest in the Banks Property and a checking account with a minimal cash balance.

**7.** The remaining 8.4% interest in Prince William I is apparently owned by a separate partnership, Key Properties. Key Properties is neither a party here nor involved in any way in the dispute.

**8.** Defendant Coward is an attorney who had represented plaintiff in an unrelated legal matter. He apparently became involved in the alleged partnership at plaintiff's urging.

**9.** Apparently, the promise of Beucler and Sterling to transfer their interests in the Banks property to BCFS was their only contribution to the new partnership.

## Analysis

The question presented by defendants' motion for partial summary judgment is whether the property interest defendants allegedly promised to transfer is properly characterized as real or personal property. If the interest is real property, then the oral promise may not be enforceable under the statute of frauds. If, however, the interest is personalty, then the statute of frauds will not bar its enforceability.[10] For the reasons set forth here, the Court concludes that the interest at issue—namely, Radnor's interest in a limited partnership which owned only real estate—is personal property.[11] Virginia's statute of frauds, therefore, does not preclude its enforceability. Put another way, enforceability of an oral promise to transfer a limited partnership interest is not barred by the statute of frauds even if the partnership's sole asset is real property. The fact that the partnership's sole asset is real estate does not trigger the real property provision of the statute of frauds. Rather, the Virginia Revised Uniform Limited Partnership Act, Va.Code Ann. § 50–73.44 (1986), is controlling, with the result that partnership interests are personalty whatever the nature of the partnership assets.

Defendants point to subsection 6 of Virginia's statute of frauds in an effort to avoid this conclusion. That provision states:

> No action shall be brought ... (6) [u]pon any contract for the sale of real estate, or for the lease thereof for more than a year ... [u]nless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent....

Va.Code Ann. § 11–2(6) (1985). This provision, defendants claim, controls because plaintiff's claim involves a contract to sell real estate. This claim is without merit. Contrary to defendants' assertion, the interest that defendants promised to transfer is not a "contract for the sale of real estate." True, the sole asset of Prince William I was an equitable interest[12] in a substantial parcel of land. But what was to be transferred was technically neither real estate nor an interest in that real estate. Instead, the precise interest involved was Radnor's—and, derivatively,

---

**10.** In the alternative, plaintiff argues that defendants should be estopped from pleading the statute of frauds as a defense because their fraudulent misrepresentations purposely misled plaintiff into relying, to his detriment, on their oral promises. Of course, the statute of frauds is not enforced when its enforcement would perpetuate a fraud or perjury. *T ... v. T ...,* 216 Va. 867, 224 S.E.2d 148 (1976); *Reynolds v. Dixon,* 187 Va. 101, 46 S.E.2d 6 (1948). Here, however, the Court's ruling that the statute is inapplicable renders unnecessary a resolution of this hotly disputed factual issue.

**11.** In this diversity case, the Court applies the law of Virginia, including its choice of law rules. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Equitable Trust Co. v. Bratwursthaus Mfg. Corp.,* 514 F.2d 565, 567 (4th Cir.1975); *Chesapeake Supply & Equip. Co. v. J.I. Case Co.,* 700 F.Supp. 1415, 1416 (E.D.Va.1988). Here, the alleged agreement took place in Virginia, was to be performed in Virginia, and involved two Virginia partnerships in a dispute, ultimately, over Virginia real estate. Under these circumstances, it is clear that Virginia substantive law governs.

**12.** Here, the contract for the sale of the Banks Property had apparently been concluded. Prince William I, therefore, acquired an equitable estate in the property. *See Ryland Group, Inc. v. Wills,* 229 Va. 459, 464, 331 S.E.2d 399, 403 (1985); *Sale v. Swann,* 138 Va. 198, 208, 120 S.E. 870, 873 (1924); *Johnson v. Merritt,* 125 Va. 162, 173, 99 S.E. 785, 788 (1919). That equitable interest, according to defendants, falls within the statute of frauds. No Virginia cases, however, were cited for this proposition, and the non-Virginia cases offered in support were decided almost seventy years ago. *See, e.g., Coldwell v. Davidson,* 187 Ky. 490, 219 S.W. 445 (1920); *Flinner v. McVay,* 37 Mont. 306, 96 p. 340 (1908). *See generally* 72 Am.Jur.2d, Statute of Frauds, § 67, at 621 (2d ed. 1974) ("The interest of a vendee under an executory contract for the sale of land, for the purpose of assignment or transfer to a third person, is generally regarded as an interest in land, and although there are authorities to the contrary, it has generally been held that the interest of the vendee cannot be transferred by an oral agreement.").

Beucler's and Sterling's—interest in Prince William I, a limited partnership.[13] In Virginia, the Revised Uniform Limited Partnership Act, Va.Code Ann. §§ 50–73.1 *et seq.* (1986 & Cum. Supp.1988), with a refreshing lack of ambiguity, characterizes an interest in a limited partnership as personal property. Specifically, it states: "A partnership interest is personal property."[14] Defendants offer no persuasive authority suggesting that this statute is inapplicable here. Absent such authority, the clear and unambiguous meaning of the statute is controlling. The promised transfer, therefore, was of personalty. Such transactions do not trigger the real property provisions of the statute of frauds.[15]

Defendants urge the Court to look beyond the form of the transferred interest to its substance. Here, the primary, if not sole, asset of the limited partnership was an interest in real estate. This was the bottom line of the proposed transfer: defendants Beucler and Sterling pledged, in effect, to transfer a prime parcel of land to the partnership. Moreover, this transfer was possible because Beucler and Sterling controlled virtually the entire equitable interest in this property, despite the winding trail of corporate identities and legal relationships. Given this, defendants argue,

the Court should give effect to the statute of frauds' underlying policy to protect against fraud in real estate transactions. *See Reynolds v. Dixon,* 187 Va. 101, 46 S.E.2d 6 (1948). Put another way, defendants argue that the form of the transaction should not be permitted to blind the Court to the substance of the transaction. To borrow an oft-quoted metaphor, if it looks like a duck, quacks like a duck and waddles like a duck, then it is a duck. Defendants, in essence, claim the "duck" here is really a transfer of real property. And to hold the statute of frauds inapplicable simply because of the transaction's technical form invites fraud in just those circumstances anticipated by the statute of frauds.

■ This argument is not without some force. Ultimately, though, it must fail. Section 50–73.44 of the Virginia Code dictates its demise. *See* Va.Code Ann. § 50–73.44 (1986). Simply put, in this provision, the Virginia General Assembly has decreed that this creature is not a "duck," that is, that a partnership interest—regardless of the nature of the partnership's assets—is personalty, not realty. Indeed, if the legal characterization of a partnership interest depended on the nature of the partnership's assets, that characterization

---

**13.** During oral argument, defendants argued that plaintiff's interest was not in the ownership of the Banks Property, but rather in a share of the profits and proceeds from sale of the Banks Property. Such an interest fits precisely within the statutory definition of a partner's interest in a partnership as "his share of the profits and surplus." Va.Code Ann. § 50–26 (1986).

**14.** Va.Code Ann. § 50–73.44 (1986). *Cf. id.* § 50–26 (In general partnerships, "[a] partner's interest in the partnership is his share of the profits and surplus, and the same is personal property."); *First Nat'l Exchange Bank of Montgomery Co. v. Kelly,* 21 B.R. 495, 496 (Bankr.W. D.Va.1982).

**15.** Virginia common law has traditionally converted partnership interests in real estate into personalty. *See Davis v. Christian,* 15 Gratt. 9, 56 Va. 11 (1859). *Accord* 8B Michie's Jurisprudence, Statute of Frauds, § 14, at 375–76 (1977). Such conversions, however, were equitable only. *Id.* at 36, 56 Va. 11. *See also Brown v. Gray,* 68 W.Va. 555, 70 S.E. 276 (1911) (conversion of partnership real estate into personalty is equitable only and, therefore, not for all pur-

poses). As defendants correctly note, the conversion into personalty was not, for example, effective for conveyances of the real estate. *Davis v. Christian,* 15 Gratt. at 36, 56 Va. 11. *See, e.g., Massie v. Parrish,* 140 Va. 717, 125 S.E. 691 (1924) (partner's sale of real estate to another partner comes within the statute of frauds). This common law exception, however, is inapplicable to the case at bar. Here, there is no promised conveyance of real estate. The promised transfer is only of an interest in a limited partnership. Even under traditional common law, therefore, the result here may very well be the same.

More significantly, the mandate of the Virginia Revised Uniform Limited Partnership Act supercedes the common law to the extent they are in direct conflict. *Cf. Wilson v. Volkswagen of America, Inc.,* 445 F.Supp. 1368, 1374 (E.D. Va.1978) (statute which limits or changes common law must be limited to its clear meaning). Here, the Virginia statute could not be any clearer in characterizing partnership interests as personalty.

might change every time the partnership acquired or disposed of assets. The legal chaos inevitably flowing from such a rule of law was surely not intended by the Virginia General Assembly. Its statement on this point is too straightforward and clear to be misconstrued. Any change must emerge from the General Assembly, not from this Court.[16]

Moreover, defendants' "substance over form" argument ignores the fact that here the particular form of the real estate interest also has substance. Defendants Beucler and Sterling consciously chose to cloak their investment in myriad layers of corporate clothing. They did not own the Banks Property in fee simple, nor did they individually have an equitable interest in the land. Instead, they had controlling interests in two corporations which, in turn, owned the sole partnership interests in a joint venture. The joint venture had both general and limited partnership interests in Prince William I, a limited partnership. Beucler and Sterling promised to transfer to BCFS only their interests in Prince William I. As a result of this complex trail of corporate entities, defendants enjoyed certain benefits, including beneficial tax consequences and protections from liability unavailable to individual owners. With these benefits, however, defendants must also accept any corresponding disadvantages. They cannot now seek relief from the legal effects of their protective cloaks simply because it does not advance their immediate interests. In sum, they cannot have it both ways.

Virginia law is clear. Limited partnership interests are statutorily designated as personal property. Va.Code Ann. § 50–73.44 (1986). The Virginia statute of frauds does not govern contracts involving personal property interests under the circumstances presented here. Accordingly, defendants' motion for partial summary judgment is denied. An appropriate order has been entered.

---

**16.** There is scant pertinent authority and none is contrary to the result reached here. Significantly, the cases relied upon by defendants predate the Virginia Revised Uniform Limited Partnership Act by more than seventy years and do not address this precise issue. *Burgwyn v. Jones,* 113 Va. 511, 75 S.E. 188 (1912), the principal case cited by defendants, involved the alleged transfer of land already owned in fee by three partners to their four-man partnership before the partnership's formation by oral agreement. The *Burgwyn* court specifically focused on whether that oral agreement was enforceable. It distinguished between two categories of cases: (1) an oral agreement where, as in *Burgwyn,* one of the partners agrees to transfer to the partnership land he already owns and (2) an agreement to form a partnership to acquire land with partnership funds after its formation. In the first category, the *Burgwyn* court concluded that the statute of frauds was applicable: " 'A parol agreement to put land into a firm, or to consider it as firm property, made before the firm exists, is wholly ineffectual to pass any title either in law or in equity.' " *Id.* at 517, 75 S.E. at 191 [quoting *McCormick's Appeal,* 57 Pa. 54, 98 Am. Dec. 191]. *See also Dobbs v. Vornado,*

*Inc.,* 576 F.Supp. 1072, 1077 (E.D.N.Y.1983). The second category, by contrast, did not fall within the statute of frauds, presumably because the fiduciary obligations binding partners when future lands were purchased with partnership funds would reduce the likelihood of fraudulent claims.

Defendants incorrectly assert that the case at bar falls squarely into the first category of cases. The facts presented here are significantly distinguishable from *Burgwyn.* This is not a case where, as in *Burgwyn,* defendants owned land outright and promised to transfer their ownership interest to a partnership. Here, the disputed interest was only a limited partnership interest, not an ownership interest in real estate. The specific nature of the partnership's asset does not, under these circumstances, alter the legal nature of the interest at issue here. *See Beach v. Anderson,* 417 N.W.2d 709 (Minn.Ct. App.1988), *petition for review denied* (Minn. March 23, 1988) (statute of frauds inapplicable to sale of interest in partnership owning real estate); *cf. Burns v. Gould,* 172 Conn. 210, 374 A.2d 193 (1977) (statute of frauds inapplicable to oral agreement to transfer stock of corporation with real estate interests).