CHARLES WINGATE

V.

JOHN L. COOMBS, ET AL.

Record No. 861229

ROBERT BREMNER

V.

JOHN L. COOMBS, ET AL.

Record No. 861230

April 21, 1989

Present: All the Justices

*S. Keith Barker* for appellant. (Record Nos. 861229 and 861230)

*Keith D. Boyette (R. Webb Moore; Hirschler, Fleischer, Weinberg, Cox & Allen*, on brief), for appellees. (Record Nos. 861229 and 861230)

COMPTON, J., delivered the opinion of the Court.

We granted this appeal to resolve a conflict in this Court's decisions on the question whether an oral partnership agreement among individuals for the purpose of acquisition and development of real property for profit is valid and not within the statute of frauds. As pertinent to this controversy, the statute provides: "No action shall be brought . . . [u]pon any contract for the sale of real estate . . . [u]nless the promise, contract, agreement, . . . or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent . . . ." Code § 11-2(6).

In 1986, appellants Charles Wingate and Robert Bremner filed separate, identical bills of complaint for declaratory and injunctive

relief against appellees John L. Coombs, Michael E. Fiore, Philip Dean, and David I. A. Mayers, Sr. The plaintiffs asked the court to declare that a partnership agreement among the six individuals was valid and that defendants be enjoined from disposing of certain Hanover County real estate which was the subject of the alleged agreement.

Defendants demurred on several grounds and, after argument of counsel, the chancellor sustained the demurrers. In October 1986 final decrees, the court dismissed with prejudice the respective bills of complaint. We consolidated for purposes of briefing and argument the plaintiffs' separate petitions for appeal and awarded them this appeal from the final decrees.

The facts will be stated as set forth in the bills of complaint, the demurrers having admitted the truth of all material facts properly pleaded. Initially, the plaintiffs and defendants Coombs and Fiore discussed the development of the subject property. Subsequently, pursuant to the conversations, the plaintiffs and the four defendants "entered into a partnership agreement whereby the six individuals . . . became partners for the purpose of the acquisition and development of the property for profit," according to the allegations. There is no claim that the agreement was in writing.

Thereafter, the plaintiffs performed various acts toward acquisition and development of the tract. This included rendering assistance in drafting contracts for purchase of the property and discussion with the other partners of strategy for negotiations for the purchase. The six individuals agreed to own the property as partners and "by virtue thereof each agreed to have a mutual and joint equal interest in said property and to divide the profits equally," according to the allegations.

When the purchase of the property was imminent, defendant Coombs advised the plaintiffs that defendants no longer considered the plaintiffs to be their partners. Later, this position was confirmed by a July 1986 letter to plaintiffs' counsel from defendants' attorney, who observed that plaintiffs were claiming "ownership of an interest in a partnership that owns the land, and not an interest in the land itself."

Subsequently, the plaintiffs filed the present suits. Asserting that defendants had repudiated their obligations under the partnership agreement, the plaintiffs asked the court to declare them partners in the partnership to share equally in the profits from the sale of the real estate.

The main ground of defendants' demurrers was that the bills failed to allege facts sufficient to support maintenance of the suits because there was no claim of existence of an agreement in writing as required by the statute of frauds. The chancellor, noting the strength of defendants' statute of frauds argument, decided to sustain the demurrers on all grounds. In the final decrees, the court refused the plaintiffs' motions for leave to amend, stating the plaintiffs had "conceded" that the alleged agreement was not contained in a writing as required by the statute of frauds.

On appeal, the plaintiffs contend the trial court erred. Upon the statute of frauds question, they principally rely on *Miller* v. *Ferguson*, 107 Va. 249, 57 S.E. 649 (1907).

The defendants argue the trial court correctly decided the issue. They rely on *Henderson* v. *Hudson*, 15 Va. (1 Munf.) 510 (1810), and *Walker* v. *Herring*, 62 Va. (21 Gratt.) 678 (1872). Defendants state that the facts of the present case, and of *Henderson* and *Miller*, are virtually identical. They correctly point out that neither *Henderson* nor *Walker*, which applied the *Henderson* rule, has been expressly overruled. They also accurately observe that the opinion in *Miller* fails to mention either *Henderson* or *Walker*. Thus, defendants say, the *Miller* decision was contrary to established law, was wrongly decided, and should not be considered binding precedent by this Court.

In order to apply the doctrine of stare decisis properly to this case, we must analyze the applicable decisions to determine the rule of law the Court has adopted. The history of the development of the rule governing this case is interesting.

■ In *Henderson*, this Court reversed a decision of Chancellor George Wythe of the High Court of Chancery. The plaintiff brought suit "for the purpose of obtaining a conveyance of a moiety of a tract of land purchased by the defendant." 15 Va. at 510. He relied upon "a *verbal* agreement between himself and the defendant, that he should be let in as a partner in the purchase." *Id.* The defendant denied the agreement and also relied upon the statute of frauds. The Chancellor ruled in favor of the plaintiff and sustained the oral agreement. He held the testimony proved that defendant agreed to associate plaintiff in the purchase of the land, and that the statute applied only to contracts, and actions upon them, between buyers and sellers of land, but not to the contract in issue. *Id.*

This Court, in an opinion by Judge St. George Tucker, held that the statute of frauds "emphatically" applied to the agreement. *Id.* at 516. Judge Tucker viewed the contract as both a contract for the sale of lands and a contract for the purchase of land "in partnership." *Id.* President William Fleming filed a concurring opinion. He agreed that the decree of the Chancellor should be reversed and the bill dismissed, but stated that he had considered the issue "with less attention than I otherwise should have done." *Id.* at 518. Judge Spencer Roane, the third judge of the Court at the time, did not sit in the case.

■ Sixty-two years later, the Court in *Walker*, examining a similar contract, held that the agreement was within the statute of frauds and that *Henderson* was "directly in point." 62 Va. at 680. The *Walker* Court noted that, in *Henderson*, Chancellor Wythe "decided that the statute applied to contracts, and actions upon them, between the buyers and sellers of land; and not to a contract between the purchaser and a third person, that such person shall be admitted as a partner in the purchase." *Id.* In *Walker*, the Court said that the *Henderson* decision meant "that although the contract was not between the buyer and seller, yet it was within the mischief intended to be guarded against by the statute, which being a remedial one, and intended to prevent a growing evil, ought to be liberally construed." *Id.*

■ Thirty-five years later, the Court considered the issue again and announced a different rule in *Miller*. There, the plaintiff entered into a parol agreement with two of the defendants for the acquisition of a tract of land upon the stipulation that the defendants were to supply the purchase money. The alleged agreement further provided that when the land was bought, it would be conveyed to one of the real estate corporations controlled by the defendants, divided into lots, sold, and the net profits arising from the sale were to be shared equally among the plaintiff and the two defendants. Later, the plaintiff instituted suit to establish the partnership agreement and to enforce its provisions. The trial court overruled defendants' demurrer and plea of the statute of frauds. Upon a hearing on the merits, the trial court dismissed the bill and the plaintiff appealed.

On appeal, this Court held "that the preliminary question raised by the demurrer and plea was rightly decided by the trial court." 107 Va. at 250, 57 S.E. at 649. The Court said the following doctrine was "established by the weight of authority on the

subject, both in England and in this country." *Id.* Quoting from a treatise, the Court stated: "It is well settled that a partnership for the purchase and sale of land for speculation, the profits to be divided among the partners, is valid when verbally made, and the existence of the partnership and the extent of the interest of the partners may be shown by parol." *Id.*

The *Miller* Court went on to say that the rule was based on the idea "that when land is acquired and held for partnership purposes, it is considered personalty as between the partners and creditors of the firm, and also between the surviving partner and the representative of a deceased partner." *Id.* at 251, 57 S.E. at 649. *See* Code § 50-73.44 ("A partnership interest is personal property.").

Finally, the *Miller* Court stated: "The decisions of this court are entirely in accord with the prevailing doctrine." *Id.* at 251, 57 S.E. at 649. The Court did not mention *Henderson* or *Walker*.

Five years later, the Court considered a similar issue in *Burgwyn* v. *Jones*, 113 Va. 511, 75 S.E. 188 (1912), and discussed *Henderson*, *Walker*, and *Miller*. Relying on the *Miller* rule, the Court distinguished it from the case under consideration. The Court said: "In . . . [*Miller*] the partnership formed was for the future purchase and sale of lands for profit. In this case the land in which, or in the proceeds of which, the [complainant] claims an interest was, at the time the partnership was formed, the property of the members of the firm other than the complainant." *Id.* at 514, 75 S.E. at 189. The Court held that the contract in issue was one providing for the sale of an interest in real estate and was within the statute of frauds. Referring to *Henderson* and *Walker*, the *Burgwyn* Court said that those cases, especially *Walker*, were in conflict with the weight of authority on the subject. *Id.* at 515, 75 S.E. at 190.

Over the years, the Court has had occasion to rely on *Henderson* and *Walker* as well as *Miller*. *See, e.g.*, *Jarrett* v. *Johnson*, 52 Va. (11 Gratt.) 327, 335 (1854) (cites *Henderson*); *Matney* v. *Yates*, 121 Va. 506, 516, 93 S.E. 694, 697 (1917) (cites *Henderson* and *Walker*); *Atlantic Coast Realty Co.* v. *Townsend*, 124 Va. 490, 499, 98 S.E. 684, 686 (1919) (cites *Miller*); *Massie* v. *Parrish*, 140 Va. 717, 731, 125 S.E. 691, 696 (1924) (*Henderson* and *Walker* relied upon, the Court noting: "It would be futile to undertake to reconcile the authorities dealing with this subject in its relation to the law of partnership, and it would be an endless

task to attempt to cite them." *Id.* at 731, 125 S.E. at 696); *Horne v. Holley*, 167 Va. 234, 240, 188 S.E. 169, 172 (1936) (relying upon *Miller*).

This background brings us to the question: What is the law of Virginia on the subject? A part of that inquiry is: Do *Henderson* and *Walker* control, or is *Miller* binding precedent? Could it be that the *Miller* Court was unaware of the earlier cases if they were not cited in the *Miller* briefs? The answer to the last query and to the overall question is furnished by reference to the documents in *Miller* which are a part of the permanent records of this Court.

The *Miller* Court was fully apprised of *Henderson* and *Walker*. The cases were relied upon in the brief of the appellees. See *Supreme Court of Appeals Ended Cases*, 1907, Vol. 3, Brief of Counsel for Appellees at 38-39.

More importantly, however, the trial judge who decided the demurrer and plea of the statute of frauds in *Miller* filed an opinion in which he discussed *Henderson* and *Walker*. The judge wrote:

"The question which determines all the issues in this case at its present stage, is, whether a contract of partnership to buy and sell land on speculation is void if not in writing?

Henderson vs. Hudson, Munf., 510; and Walker vs. Herring, 21 Gratt., 678, apparently hold that in this state such contracts must be in writing, but a close examination of these cases will show, that the question has really never been directly passed upon here. Therefore as the great weight of authority in England and America uphold parole contracts of partnership to buy and sell on speculation, I do not feel justified by the above cases, in holding Virginia an exception to the current of modern authority, and will have to sustain the motion to strike out the plea and over-rule the defendants' demurrer." *Id.*, Petition at 290-91.

■ This bit of history clearly demonstrates, and we hold, that the *Miller* Court overruled, *sub silentio*, both *Henderson* and *Walker* insofar as those decisions conflicted with the rule announced in *Miller*. Obviously, the *Miller* Court was acutely aware of the two earlier decisions. Not only were they relied upon on brief, but the very ruling under review discussed the cases. We will not speculate why the Court chose not to mention the earlier

authority. Nevertheless, it is clear that the Court determined not to follow the earlier rule and decided to adopt the majority view, which became the law of Virginia on the subject.

■ Consequently, applying the doctrine of stare decisis, we hold that the trial court in the present case erred in sustaining defendants' demurrers and in holding that the agreement in issue was within the statute of frauds. We reaffirm the rule announced in *Miller*.

It is unnecessary for us to discuss the trial court's ruling on the other grounds of demurrer. Counsel advised us during oral argument of the appeal that the subject property has been sold and that the proceeds are being held pursuant to a lis pendens. Amendment of the pleadings likely will be necessary in view of the changed circumstances and the remaining issues raised by demurrer probably will not arise again.

Therefore, the final decrees will be reversed and the causes remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*