WAYNE GIBBENS

V.

MARK HARDIN

Record No. 890333

March 2, 1990

Present: All the Justices

*Daniel M. O'Connell, Jr. (O'Connell & Mayhugh*, on briefs), for appellant.

*Paul B. Terpak (John A. C. Keith; Blankingship & Keith*, on brief), for appellee.

JUSTICE HASSELL delivered the opinion of the Court.

The primary issue in this dispute is whether the statute of frauds prohibits the enforcement of an oral agreement to divide real property.

On March 9, 1987, Wayne Gibbens and Mark Hardin met to discuss a joint effort to purchase a tract of real estate. The property consisted of three parcels in Fauquier County. Gibbens wanted to acquire Parcels 1 and 2 whereas Hardin wanted to acquire Parcel 3. Parcel 1 contained 103.2796 acres, Parcel 2 contained 104.0423 acres, and Parcel 3 contained 188.3614 acres. Two houses are located on Parcel 3.

Hardin and Gibbens decided to make an offer of $2.2 million to purchase the property. Their offer was tendered by Verne Hosta, their joint agent and attorney.

Hosta drafted a memorandum of understanding, dated March 11, 1987, between Hardin and Gibbens which delineated how the property would be divided. This memorandum was signed by Gibbens and Hardin before the $2.2 million offer was made.[1]

The $2.2 million offer was rejected on March 13, 1987. Hardin called Gibbens that night, and they decided to meet the next morning to discuss whether they should make another offer. During the meeting, Gibbens and Hardin decided to make an offer of $2.4 million.

Gibbens could not afford to increase the $2.2 million offer to $2.4 million unless he could claim the interest on the loan he needed to purchase Parcels 1 and 2 as a tax deduction. He had to obtain one of the two houses located on Parcel 3 and maintain that house as his residence to qualify for the tax deduction. Gibbens claimed that Hardin agreed to a boundary adjustment which would have given Gibbens an additional 3.075 acres of land and the two houses located on Parcel 3. Gibbens also claimed that Hardin agreed to give him an easement of access to one of the houses on Parcel 3. Hardin denied that he agreed to the boundary adjustment, conveyance of the houses, or the easement.

Gibbens went to Hosta's home after the March 14 meeting and informed Hosta that he and Hardin had reached an agreement. Gibbens instructed Hosta to make an offer of $2.4 million on behalf of Gibbens and Hardin. Gibbens expected to sign a memo-

---

[1] Gibbens recognized the importance of signing the memorandum of understanding before the $2.2 million offer was made. Gibbens testified at trial:

"Mr. Hosta drafted the two instruments involved, and to get them executed, to get them signed was something of a logistic problem, it was on March 11th, and I couldn't be away from my office and the instruments needed to be signed before the contract could go in, so it necessitated getting someone to come out to Middleburg to Mr. Hosta's office to get the instrument and bring them [sic] in to my office.

My wife came in there and got them and she served as delivery person and it took most of the day it [sic]. It was kind of a complicated logistical thing, but at any rate, the agreement between Mark [Hardin] and me was signed on March 11th, and then after that Mr. Hosta put in the contract."

randum of understanding which specified how he and Hardin would divide the property.[2]

Hosta made the offer on March 15, 1987. The offer was accepted on March 31, 1987. Hosta prepared a memorandum of understanding dated March 16, 1987, and mailed it and a cover letter to Gibbens and Hardin. Gibbens called Hosta by telephone before Gibbens received the memorandum and cover letter. Hosta read the memorandum to Gibbens. Gibbens was concerned because the memorandum did not delineate how the boundary adjustment would be made.

Hardin met with Hosta on March 19 to discuss the memorandum. Hardin was dissatisfied with the language in the memorandum which referred to the boundary adjustment. Hardin placed four marks across paragraph 3(C) of the memorandum and signed the document. Paragraph 3(C) states: "The parties hereto shall adjust the boundaries to their respective parcels so that Wayne Gibbens shall own one (1) of the occupied tenant houses on Parcel 3 and shall discuss an easement for access to said house on Parcel 3."

Gibbens filed a suit against Hardin, seeking specific performance of their purported oral agreement. Gibbens requested, and received, an issue out of chancery pursuant to Code § 8.01-336E. The jury found that Hardin agreed to make a boundary adjustment and convey the houses to Gibbens and that Hardin agreed to give Gibbens an easement of access. Hardin filed a motion to set the verdict aside. The chancellor set aside the verdict and concluded that the evidence was "not of the quality" which would support specific performance and that the oral agreement was unenforceable because of the statute of frauds.

Gibbens argues that the chancellor was bound by the jury's verdict. We find no merit in this argument. The chancellor observed: "[I]n looking at the conflicting evidence on the intentions of the parties . . . the evidence is not of the quality that I feel I can order specific performance on. I think the contract is . . . in

---

[2] Gibbens testified at trial:

*Question*: What did you expect, if anything, about the procedure that was going to be followed with this offer [the second offer of $2.4 million]?

*Gibbens*: I expected them to be the same that I had on the previous offer.

*Question*: Meaning you have . . . [to] sign the . . . [memorandum of understanding] first?

*Gibbens*: Exactly, because we had gone to a good deal of trouble to make sure the agreement between Mark [Hardin] and me was signed before we put in that first contract.

doubt." We conclude that it was appropriate for the chancellor to set aside the verdict of the jury on the issue out of chancery. "The chancellor is the keeper of his own conscience and the purpose of the issue is to satisfy him. . . . [T]he verdict . . . is not binding but is merely persuasive." *Harris* v. *Citizens Bank, etc., Co.*, 172 Va. 111, 133, 200 S.E. 652, 660 (1939).

■ The alleged oral boundary agreement between Gibbens and Hardin is unenforceable because it fails to comply with Virginia's statute of frauds. The statute provides: "No action shall be brought . . . [u]pon any contract for the sale of real estate . . . [u]nless the promise, contract, agreement . . . or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent. . . ." Code § 11-2(6).

The oral agreement between Gibbens and Hardin is substantially similar to a parol agreement that we considered in *Jarrett* v. *Johnson*, 52 Va. (11 Gratt.) 327 (1854).[3] In *Jarrett*, James McDowell executed a contract dated September 8, 1849 to sell Barnabas Johnson a tract of land. This contract allowed either party to withdraw from the contract by giving written notice on or before October 1, 1849. On September 26, 1849, Johnson and James Jarrett executed a written agreement which specified how they would divide the land that Johnson had conditionally purchased from McDowell. McDowell exercised his right to withdraw from the September 8, 1849 contract. In October, 1849, McDowell informed Jarrett that the property was again for sale. Jarrett and Johnson met and decided to make an offer to acquire the property. McDowell conveyed the land to Johnson and Jarrett by deed dated November 5, 1849. Immediately, there was a dispute between Johnson and Jarrett as to how the land should be divided.

Johnson and Jarrett did not sign a written agreement specifying how they were to divide their land. Jarrett claimed that he was entitled to 50% of the land but Johnson contended that Jarrett was entitled to a smaller percentage. Johnson filed a suit for partition. We concluded in *Jarrett* that any oral agreement that may have been made between Jarrett and Johnson was unenforceable because of the statute of frauds. An observation that we made in *Jarrett* is equally applicable today:

---

[3] Gibbens does not distinguish *Jarrett* from the present case. *Jarrett* is not discussed in Gibbens' opening brief. Nor is *Jarrett* discussed in Gibbens' reply brief, even though Gibbens' counsel stated during oral argument before this Court that he discussed *Jarrett* in his reply brief.

It was not the object of the statute to give any greater effi-
cacy to written contracts for the sale of lands than they pos-
sessed at the common law; but merely to require such con-
tracts to be made in writing, in order to lay the foundation of
a suit at law or in equity . . . . The statute does not say that
a written agreement shall bind, but that an unwritten agree-
ment shall not bind.

*Jarrett*, 52 Va. (11 Gratt.) at 335 (citations omitted).

 The rule that we articulated in *Jarrett* has been the law of
this Commonwealth for over 146 years.[4] The legal principle is
sound. In a suit for specific performance, a written agreement in-
sures that a court enforces the agreement made by the parties and
reduces the likelihood that a court will create an agreement where
none existed.

Gibbens, relying upon *Yaffe v. Heritage Savings & Loan*, 235
Va. 577, 369 S.E.2d 404 (1988), argues that Hosta's letter dated
March 16, 1987 satisfies the requirements of the statute of frauds.
In *Yaffe*, we considered the narrow question of whether a trustee,
personally conducting a foreclosure sale pursuant to a deed of
trust, had authority to bind the highest bidder by making a writ-
ten memorandum which would satisfy the statute of frauds. *Yaffe*
involved the unique relationship among an auctioneer, buyer, and
seller of property. Such a relationship did not exist among Gib-
bens, Hardin, and Hosta.

 There is no evidence which suggests that Hosta had the au-
thority to bind Gibbens or Hardin to the March 16, 1987, memo-
randum. The memorandum was merely a draft which Hosta pre-
pared for his clients. Neither Gibbens nor Hardin was satisfied
with its content. When Hosta read the memorandum to Gibbens
during a telephone conversation, Gibbens requested that he re-
draft the memorandum because it did not describe the boundaries
which were to be adjusted. The memorandum did not identify
which of the two houses Hardin was to convey to Gibbens. Nor
did it specify the terms of the easement. Hardin objected to the

---

[4] We held in *Wingate* v. *Coombs*, 237 Va. 501, 379 S.E.2d 304 (1989), that an oral
partnership agreement to acquire and develop real property for profit was valid and not
within the statute of frauds. *Wingate* is not applicable to the present case and does not
affect our earlier decision in *Jarrett*. The present case does not involve an oral partnership
agreement to acquire and develop property for profit. Gibbens testified that he wanted to
obtain the property for his personal use.

memorandum because it referred to a boundary adjustment that he had not agreed to make. The transmittal letter which Hosta sent with the memorandum is nothing more than a cover letter and does not constitute a writing sufficient to satisfy the statute of frauds.[5]

■ Finally, Gibbens argues that the statute of frauds does not apply because the parol agreement between Gibbens and Hardin constitutes either an express trust or a resulting trust. In Virginia, an agreement which is the basis of an express trust or a resulting trust may be proven by parol evidence, and does not violate the statute of frauds. *Peal* v. *Luther*, 199 Va. 35, 37, 97 S.E.2d 668, 669-70 (1957) (express trust); *Salyer* v. *Salyer*, 216 Va. 521, 525, 219 S.E.2d 889, 893 (1975) (resulting trust). "That an express trust in land may be set up by parol is perfectly well settled in this State. . . . It is equally true, however, that in order to establish such a trust the declaration must be unequivocal and explicit, and the evidence thereof must be clear and convincing." *Brame* v. *Read*, 136 Va. 219, 221-22, 118 S.E. 117, 118 (1923) (citations omitted); *Leonard* v. *Counts*, 221 Va. 582, 588, 272 S.E.2d 190, 194 (1980) ("An express trust is based on the declared intention of the trustor.") This record is utterly devoid of any evidence capable of establishing an express trust. There is nothing in the record which indicates that Hardin intended to hold the legal estate for Parcel 3 on behalf of Gibbens.

■ Gibbens also failed to demonstrate the existence of a resulting trust. "A resulting trust is based upon a presumed intent or inference of law deduced from the facts and circumstances." *Gifford* v. *Dennis*, 230 Va. 193, 198, 335 S.E.2d 371, 374 (1985) (quoting *Leonard*, 221 Va. at 588, 272 S.E.2d at 194). We have held that:

---

[5] The cover letter states:

Dear Wayne,

Enclosed please find a copy of the contract I submitted yesterday on behalf of you and Mark Hardin. I am also enclosing a revised Memorandum of Understanding which outlines everything which, I believe, you and Mark have agreed to so far. Please return the signed Memorandum to me.

If you have any questions, please call.

Very truly yours,
Verne L. Hosta

cc: Mark Hardin

[A] resulting trust arises when one person pays for property, or assumes payment of all or part of the purchase money, but has title conveyed to another with no mention of a trust in the conveyance . . . . Although a subsequent payment of, or promise to pay, the purchase price will not create a resulting trust, such a trust arises when prior to the purchase one person binds himself to pay purchase money and stands behind his commitment, but title is conveyed to another.

*Leonard*, 221 Va. at 588, 272 S.E.2d at 194-195 (citations omitted). Hardin did not buy Parcel 3 for Gibbens. Hardin purchased the parcel for himself and title was conveyed directly to Hardin. We conclude that neither an express trust nor a resulting trust arose. Accordingly, the final decree of the trial court is

*Affirmed.*