RONALD STEPHEN BOWERS, ET AL.

v.

WESTVACO CORPORATION, ET AL.

Record No. 911558

RONALD STEPHEN BOWERS, ET AL.

v.

WESTVACO CORPORATION, ET AL.

Record No. 911706

WESTVACO CORPORATION, ET AL.

v.

RONALD STEPHEN BOWERS, ET AL.

Record No. 911745

June 5, 1992

Present: Carrico, C.J., Compton, Whiting, Lacy, Hassell, and Keenan, JJ.,
and Poff, Senior Justice

*William A. Parks, Jr. (Parks & Vaught*, on briefs), for appellants. (Record Nos. 911558, 911706 and 911745)

*Thomas T. Lawson (Frank K. Friedman; William H. Fralin, Jr.; Michael McHale Collins; Woods, Rogers & Hazelgrove; Collins, Crackel & Mooney*, on brief), for appellees Westvaco Corporation, Jennings & Webb, Inc. and Pounding Mill, Inc. (Record Nos. 911558 and 911706)

*Thomas T. Lawson (Frank K. Friedman; William H. Fralin, Jr.; Michael McHale Collins; Woods, Rogers & Hazelgrove; Collins, Crackel & Mooney*, on briefs), for appellees. (Record No. 911745)

JUSTICE HASSELL delivered the opinion of the Court.

In these consolidated appeals, we consider whether certain acts are sufficient to constitute an actionable private nuisance and, if so, the appropriate damages which are recoverable as a result of those acts.

## I. Proceedings

Ronald Stephen Bowers, Kathy D. Bowers, David Micah Bowers (an infant suing by his mother and next friend), and Justin Anthony Bowers (an infant suing by his father and next friend) filed their "Consolidated Amended Motion for Judgment and Third Amended Bill of Complaint" against Westvaco Corporation, Jennings & Webb, Inc., and Pounding Mill, Inc. (collectively referred to as

defendants).[1] The Bowers alleged, among other things, that the defendants had created and maintained a private nuisance. The Bowers sought compensatory and punitive damages. The defendants filed responsive pleadings in which they denied liability.

The chancellor granted the Bowers' motion requesting an issue out of chancery on the question of damages, and the jury returned verdicts in favor of the Bowers. Even though the chancellor declined to enter a judgment confirming the quantum of the verdicts, he awarded damages to the Bowers. Both sides appeal.

## II. Facts

Ronald Stephen Bowers and Kathy D. Bowers, husband and wife, have owned and occupied a house located in Alleghany County since September 1986. Their two young children, David Micah Bowers and Justin Anthony Bowers, reside with them. The house is located in an area which has a business zoning classification. Mr. Bowers operates a heating and air conditioning business from his home.

Pounding Mill acquired property, identified in the record as Lots 1 and 2, adjacent to the Bowers' property in November 1989. Pounding Mill executed a lease with Westvaco Corporation, the owner of a paper mill in Covington which produces approximately 2,500 tons of paper product daily. Pursuant to the terms of the lease, Westvaco utilizes the lots for the location of a truck staging operation. Westvaco retained defendant Jennings & Webb to conduct the truck staging operation.

Jerry L. Webb, president of Jennings & Webb, described the truck staging operation. First, an ''off-the-road driver'' will park a tractor and an empty trailer on Lot 1 or 2. Next, the driver disconnects the empty trailer and connects his tractor to a loaded trailer. He then takes the loaded trailer to an off-site destination. Jennings & Webb transports the empty trailer to Westvaco's paper mill where the trailer is loaded with paper product. The loaded trailer is returned to Lot 1 or 2 and the cycle begins again, an ''off-the-road driver'' connects his tractor to a loaded trailer and transports it to an off-site destination.

---

[1] Other parties were initially involved in this litigation. Those parties were dismissed and need not be identified here.

Jennings & Webb conducts the truck staging operation 24 hours a day, every day of the year. During the period covering March 1990 through November 1990, Jennings & Webb transported over 28,000 trailers between Lots 1 and 2 and the paper mill.

The truck staging operation is located approximately 25 feet from the Bowers' living room window. One entrance to the truck staging operation is located 10 to 20 feet away from the Bowers' driveway.

Mr. Bowers testified that the "hissing" of the air brakes and the "hitching of the [tractor-trailers'] fifth wheels" sound "like a shotgun going off 20 or 30 times a night right near your home." The Bowers hear the sounds of the tractor-trailer horns "at all hours of the night." The sound of the horns interrupts the family's sleep. Lights from the tractors constantly shine into the Bowers' bedrooms and illuminate the living room. "It is like living in an interstate median," Bowers said. The Bowers are unable to rest properly because of the constant noise.

The tractors' engines are constantly idling. Vibrations, created by moving trucks, shake the Bowers' house. The vibrations have cracked the concrete pad on the rear porch.

The truck staging operation created dust which covered the exterior of the Bowers' home and settled on their cars. The Bowers are unable to utilize their side porch because of the dust, confusion, and noise. James C. Forsythe, the owner of an appraisal company, testified that the Bowers incurred a diminution in the value of their home because of the existence of the truck staging operation.

Pounding Mill made changes in the grading of Lots 1 and 2 to accommodate the truck staging operation. These changes have caused water to run off the lots onto the Bowers' property.

Karen McCulley Bowles, a property owner who lives near the truck staging operation, testified that the truck operation "sounds a whole lot like a chain saw running. It's just a roar and then it sounds like thunder." Thomas D. Lair, another property owner who lives in the vicinity of the truck staging operation, observed the noise, dust, and pollution created by the trucks.

Kathy Bowers has incurred medical expenses as a result of the conditions created by the truck staging operation. She was treated by Dr. Deborah G. Allen, an internist, who described Mrs. Bowers as distraught, depressed, and very nervous. Dr. Allen prescribed antidepressant medication for her. Dr. Lewis Richard Sutton, a psychiatrist, also treated Mrs. Bowers, and diagnosed her condition as one

of major depression which was caused, in part, by the truck staging operation. He also prescribed medication for her.

Dr. Harry P. Kornhiser, an asthenic physician specializing in neurology and psychiatry, examined David and Justin Bowers. He testified that both boys experienced adjustment disorders associated with the conditions caused by the truck staging operation.

### III. Private Nuisance

At the request of defendant Pounding Mill, the Board of Supervisors of Alleghany County rezoned Lots 1 and 2 to a zoning classification which permits the truck staging operation. The Board imposed certain conditions in an attempt to decrease the impact of the truck staging operation upon the Bowers' property. Therefore, defendants argued, both in the trial court and here, that ''when the Board of Supervisors, after reviewing a particular activity and imposing conditions designed to minimize its effect on neighbors, has rezoned a property to accommodate that activity, the court may not superimpose its judgment by declaring the activity a nuisance.'' The trial court, rejecting the defendants' argument, held that the truck staging operation constituted a private nuisance because it unreasonably interfered with the Bowers' use and enjoyment of their property.

We have, on numerous occasions, discussed the law of private nuisance. In *National Energy Corp.* v. *O'Quinn*, 223 Va. 83, 286 S.E.2d 181 (1982), we stated:

> When a business enterprise, even though lawful, becomes obnoxious to occupants of neighboring dwellings and renders enjoyment of the structures uncomfortable by virtue of, for example, smoke, cinders, dust, noise, offensive odors, or noxious gases, the operation of such business is a nuisance. *Barnes* v. *Quarries, Inc.*, 204 Va. 414, 417, 132 S.E.2d 395, 397 (1963). The term 'nuisance' includes 'everything that endangers life or health, or obstructs the reasonable and comfortable use of property.' *Id.*

223 Va. at 85, 286 S.E.2d at 182.

In *Foley* v. *Harris*, 223 Va. 20, 286 S.E.2d 186 (1982), we said that we broadly construe an occupant's right to the ''use and enjoyment of land.'' *Id.* at 28, 286 S.E.2d at 190.

The phrase 'use and enjoyment of land' is broad. It comprehends the pleasure, comfort and enjoyment that a person normally derives from the occupancy of land. Freedom from discomfort and annoyance while using land, which inevitably involves an element of personal tastes and sensibilities, is often as important to a person as freedom from physical interruption with use of the land itself. The discomfort and annoyance must, however, be significant and of a kind that would be suffered by a normal person in the community.

*Id.* at 28, 286 S.E.2d at 190-91 (citations omitted). Additionally, the location of a business enterprise, or the zoning classification of the property on which the business is located, cannot immunize the business from a nuisance action.

It is generally held that the location of an industry in an industrial area and its importance to the wealth and prosperity of the community do not give to it rights superior to the primary or natural rights of those who live nearby. Locality and surroundings are to be taken into consideration only in determining whether the business or industry is so conducted as to constitute a nuisance as a matter of fact. It is of no consequence that an industry or a business is a useful or necessary one, or that it promotes the development of the community.

The issue [is] not whether [the business enterprise is] located in an industrial area, nor whether plaintiff's damage was unsubstantial, 'because of the industrial use being made of nearby properties,' nor whether the operation of defendant's plant was 'reasonable when the character of the area is considered,' but whether or not its operation caused substantial damage to the plaintiff, regardless of the location of the plant and the nature and importance of its operation.

*Smith* v. *The Pittston Company*, 203 Va. 711, 717, 127 S.E.2d 79, 83-84 (1962) (citations omitted).

In *Barnes* v. *Quarries, Inc.*, 204 Va. 414, 132 S.E.2d 395 (1963), the owners of a quarry, just as the defendants here, argued that their activities could not constitute a private nuisance because those activities were permitted by a local zoning ordinance. Rejecting that argument, we stated:

> Respondent contends that in this instance it is shielded from liability for a nuisance because it has secured a use permit for its operation pursuant to Fairfax County's zoning ordinance. This contention is without merit. The permit did no more than allow the respondent to do what the zoning law otherwise prohibited. . . . It is beyond the power of a county or municipality to authorize the maintenance of a nuisance.

*Id.* at 417, 132 S.E.2d at 397 (citations omitted).

■■■ We hold that the trial court did not err by finding that the acts of the defendants constituted a private nuisance. The court properly considered the zoning classification of the property as an important factor in determining whether the business is so conducted as to constitute a nuisance. *See Smith* v. *The Pittston Co.*, 203 Va. at 717, 127 S.E.2d at 84. However, the chancellor also considered the unreasonable conditions created by the truck staging operation and the impact of those conditions upon the Bowers' right to the use and enjoyment of their property. As we stated in *O'Quinn*, "[t]he law does not allow an individual to be driven from his home, or to be forced to live in it in positive discomfort, even though the obnoxious condition may be caused by a lawful, useful business carried on in his neighborhood." 223 Va. at 91, 286 S.E.2d at 186.

### IV. Issue Out of Chancery

The jury which heard the issue out of chancery returned the following verdicts: Ronald Stephen Bowers — $358,800; Kathy D. Bowers — $462,800; David Micah Bowers — $201,000; and Justin Anthony Bowers — $201,000. The defendants moved to set aside the verdicts as excessive. The chancellor, in its final decree, reduced the awards: Ronald Stephen Bowers — $158,800; Kathy D. Bowers — $212,800; David Micah Bowers — $51,000; and Justin Anthony Bowers — $51,000.

■ The Bowers argue that the trial court erred by reducing the verdicts. The Bowers advanced numerous arguments in their brief, challenging the chancellor's failure to confirm the verdicts. We find it unnecessary to respond to each argument raised by the Bowers because those arguments ignore the unique role of the chancellor and the purpose of the issue out of chancery. As we recently stated in *Gibbens* v. *Hardin*, 239 Va. 425, 389 S.E.2d 478 (1990), " '[t]he chancellor is the keeper of his own conscience and the purpose of

the issue is to satisfy him. . . . [T]he verdict . . . is not binding but is merely persuasive.' '' *Id.* at 429, 389 S.E.2d at 479 (quoting *Harris* v. *Citizens Bank, etc., Co.*, 172 Va. 111, 133, 200 S.E. 652, 660 (1939)).

■ Here, the verdicts shocked the chancellor's conscience. Furthermore, the chancellor wrote in his memorandum opinion that "the jury was motivated by passion, misconceived the law and [the awards are] so out of proportion to the injur[ies] suffered to suggest that [they are] not the product of a fair and impartial decision." We hold that the chancellor did not err by refusing to confirm the verdicts of the issue out of chancery because such verdicts, unlike verdicts in law actions, are merely advisory.

## V. Damages

The defendants contend that the trial court erred by allowing recovery for emotional distress as an element of damages in the nuisance suit.[2] They argue that, in a suit to recover damages caused by a private nuisance, compensable damages are limited to "compensation for loss or deprivation of rights associated with property and for harm resulting therefrom." We disagree.

■ In *Bragg* v. *Ives*, 149 Va. 482, 140 S.E. 656 (1927), we stated that " 'the term nuisance, in legal parlance, extends to everything that endangers life or health, gives offense to the senses, violates the laws of decency, or obstructs the reasonable and comfortable use of property.' '' *Id.* at 497, 140 S.E. at 660 (citation omitted). Later, in *Barnes*, 204 Va. at 417, 132 S.E.2d at 397 (1963), we held "that the term 'nuisance' embraces everything that endangers life or health, or obstructs the reasonable and comfortable use of property." 204 Va. at 417, 132 S.E.2d at 397 (citing *Bragg*, 149 Va. at 497, 140 S.E. at 660). In *Newport News* v. *Hertzler*, 216 Va. 587, 221 S.E.2d 146 (1976), we again stated that "the term 'nuisance' embraces everything that endangers life or health, or obstructs the reasonable and comfortable use of property." *Id.* at 592, 221 S.E.2d at 150. In *O'Quinn*, we repeated that "the term 'nuisance' includes 'everything that endangers life or health, or obstructs the reasonable and comfortable use of property.' '' 223 Va. at 85, 286 S.E.2d at 182 (citations omitted).

---

[2] The Bowers argue that the defendants failed to raise this issue in the trial court. Our review of the record indicates that the issue was raised below.

■ In view of this established precedent, it is clear that a litigant in this type of case is entitled to recover, as an element of damages, compensation for physical or emotional injuries resulting from a nuisance which has endangered "life or health." *See also Cohen* v. *Bellenot,* 2 Va. Dec. 639, 642, 32 S.E. 455, 456 (1899). We also note that our longstanding precedent is consistent with the Restatement (Second) of Torts, § 821D comment a, which states, in part:

> It is obvious from the history of the action for private nuisance that the interests originally protected were interests in the use and enjoyment of land, including interests in the use and enjoyment of easements and profits. These interests continue to be the interests that are protected by actions for private nuisance. When there is an invasion of these interests, the plaintiff may recover not only for harm arising from acts that affect the land itself and the comfortable enjoyment of it, but also for harm to members of his family and to his chattels.

■ Our review of the record discloses clear and convincing evidence that each member of the Bowers family incurred emotional injuries as a proximate result of the defendants' acts. For example, Mrs. Bowers required psychiatric care, David and Justin Bowers were diagnosed as having certain negative psychological conditions, and each member of the family suffered severe sleep deprivation.

The defendants also argue that David and Justin Bowers are not entitled to recover damages for the nuisance because they have no ownership interest in the property owned by their parents. We disagree.

■ We have repeatedly held that an owner *or* occupant of land has a right to recover against the operator of a private nuisance. In *Virginian Railway Co.* v. *London,* 114 Va. 334, 76 S.E. 306 (1912), we stated:

> 'A private nuisance is the using, or authorizing the use of, one's property, or of anything under one's control, so as to injuriously affect an owner or occupier of property (1) by diminishing the value of that property; (2) by continuously interfering with his power of control or enjoyment of that property; (3) by causing material disturbance or annoyance to him in his use or occupation of that property.'

*Id.* at 344-45, 76 S.E. at 308 (citation omitted). Additionally, we stated in *O'Quinn*:

> When a business enterprise, even though lawful, becomes obnoxious to occupants of neighboring dwellings and renders enjoyment of the structures uncomfortable by virtue of, for example, smoke, cinders, dust, noise, offensive odors, or noxious gases, the operation of such business is a nuisance. . . .

> A nuisance may diminish value of realty. The condition also may interfere with some right incident to the ownership or possession of real property. Such interference may be accomplished by substantially impairing the occupant's comfort, convenience, and enjoyment of the property, causing a material disturbance or annoyance in the use of the realty.

223 Va. at 85, 286 S.E.2d at 182 (citations omitted).

Accordingly, we hold that the Bowers' children, as lawful occupants of the land, are entitled to recover damages for injuries they incurred as a result of the defendants' maintenance of the private nuisance. This holding is consistent with the Restatement (Second) of Torts, § 821E comment d, which states:

> Members of the family. 'Possession' is not limited to occupancy under a claim of some other interest in the land, but occupancy is a sufficient interest in itself to permit recovery for invasions of the interest in the use and enjoyment of the land. Thus members of the family of the possessor of a dwelling who occupy it along with him may properly be regarded as sharing occupancy with intent to control the land and hence as possessors, as defined in § 328E. When there is interference with their use and enjoyment of the dwelling they can therefore maintain an action for private nuisance. Although there are decisions to the contrary, the considerable majority of the cases dealing with the question have so held.

## VI. Excessiveness of the Awards

The defendants argue that the trial court's award of $473,000 is excessive because, they say, the Bowers' evidence does not support the award. We disagree.

Although the chancellor heard this case with a jury on an issue out of chancery, the chancellor did not approve its verdict but, rather, entered a decree based upon the evidence. When the chancellor hears the evidence *ore tenus*, his decree is entitled to the same weight as the verdict of a jury. *Barnes* v. *Craig*, 202 Va. 229, 234, 117 S.E.2d 63, 67 (1960). Thus, the chancellor's decree will not be disturbed unless it is clearly wrong or without evidence to support it. Code § 8.01-680; *Carter* v. *Carter*, 223 Va. 505, 508-09, 291 S.E.2d 218, 220 (1982). In view of the facts summarized in Part II of this opinion, we cannot say as a matter of law that the decree is plainly wrong or without evidence to support it.

## VII. Punitive Damages

The Bowers alleged in their "Consolidated Motion for Judgment and Third Amended Bill of Complaint" that they are entitled to recover punitive damages because of the defendants' operation of a private nuisance. The chancellor struck the Bowers' claims for punitive damages at the conclusion of their evidence. The Bowers argue that they presented sufficient evidence for the jury to consider their claims of punitive damages. We disagree.

We have repeatedly stated that an award of punitive damages is not favored generally because punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct. *Owens-Corning Fiberglas Corp.* v. *Watson*, 243 Va. 128, 144, 413 S.E.2d 630, 639 (1992); *Philip Morris Incorporated* v. *Emerson*, 235 Va. 380, 407, 368 S.E.2d 268, 283 (1988). A litigant, who seeks an award of punitive damages, must present evidence that the defendant's acts were "so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct. . . ." *Booth* v. *Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988). We have discussed the type of conduct which would support an award of punitive damages.

"In order that one may be held guilty of wilful or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result."

*Infant C.* v. *Boy Scouts of America*, 239 Va. 572, 581, 391 S.E.2d 322, 327 (1990) (quoting *Thomas* v. *Snow*, 162 Va. 654, 660, 174 S.E. 837, 839 (1934)).

We hold that the Bowers failed to present sufficient evidence which would support an award of punitive damages. The truck staging operation was a use permitted by the existing zoning classification. Jennings & Webb installed sound controls and mufflers on their trucks in an effort to reduce the level of noise. Westvaco sought to reduce the amount of fugitive dust which was created by the truck staging operation by "wetting" the parking area. Certain portions of Lots 1 and 2 were paved in an effort to reduce the levels of dust.

■ Westvaco forwarded letters to all the "over-the-road" trucking companies and requested that drivers conduct themselves in a proper manner when traveling to and from the truck staging operation. Signs were posted in Westvaco's truck lots to discourage speeding and excessive throttling of engines or idling of equipment. Westvaco's dispatchers and security personnel were directed to monitor the premises and inform its transportation manager of any violations. Trucking companies whose drivers displayed a chronic disregard for the community were informed that they would "be de-emphasized" in Westvaco's future plans.

Even though the defendants' acts were not sufficient to abate the conditions created by the truck staging operation, their acts did not constitute the type of "willful or wanton conduct" which is necessary to support an award of punitive damages.

## VIII. Conclusion

Finding no error below, we will affirm the decree of the chancellor.

*Affirmed.*