## CIRCUIT COURT OF THE CITY OF NORFOLK

MDM Associates

    v.

Johns Brothers
Energy Technologies,
JFB, Inc.,
and Tate Engineering
Systems, Inc.

July 31, 2002

Case No. (Law) L01-1190

BY JUDGE CHARLES D. GRIFFITH, JR.

On May 22, 2001, Plaintiff MDM Associates (MDM) filed a Motion for Judgment against the following Defendants: Johns Brothers Energy Technologies (JBET), JFB, Inc. (JFB), and Tate Engineering Systems, Inc. (Tate). In its Motion, Plaintiff alleges that Defendants are liable for damages allegedly caused by the installation of an allegedly defective boiler. More specifically, Plaintiff alleges breach of contract, breach of express and implied warranties, and constructive and actual fraud against JBET and JFB. Regarding Defendant Tate, Plaintiff also alleges constructive and actual fraud. Plaintiff demands judgment against Defendants for both compensatory and punitive damages.

The relevant facts, as alleged in Plaintiff's Motion for Judgment, are as follows. Plaintiff, the owner of an apartment building known as Pembroke Towers Apartments, sought to replace its heating system. Mot. for J., ¶¶ 1-2. Plaintiff contacted Energy Technologies, Inc. (ETI), which had provided maintenance to the existing heating system, to solicit a proposal for a new boiler. *Id.*, ¶ 2. Defendant JBET is allegedly the succeeding corporation of ETI, which allegedly changed its corporate name to JFB, Inc., and is allegedly liable for ETI's acts. *Id.*, ¶¶ 16-17.

ETI and Defendant Tate allegedly inspected Plaintiff's premises to determine what boiler would be appropriate for its heating system. *Id.*, ¶ 4. On August 8, 1997, Plaintiff contracted with ETI for the delivery, installation, and start up of a new boiler. *Id.*, ¶ 24. Defendant Tate allegedly sold the boiler to ETI, supervised the installation and was allegedly solely responsible for putting it into service. *Id.*, ¶ 6. ETI allegedly expressly warranted that the boiler was an appropriate replacement for the existing system and implicitly warranted that the boiler was of good quality, free from defects, and specifically suitable for its intended use. *Id.*, ¶¶ 7, 26, 29-30.

In October of 2000, Plaintiff allegedly discovered that the boiler was inappropriate for the building because it was oversized and the system design was defective. *Id.*, ¶ 11. This allegedly caused damage to the boiler, which required extensive repairs. *Id.*, ¶¶ 12-13. Defendant Tate allegedly made necessary repairs and replacements; however, the work did not solve the problems because of the boiler's alleged defects and improper size. *Id.*, ¶ 12-13.

Plaintiff allegedly notified Defendants of the above-mentioned defects, and Defendants allegedly refused or were unable to cure the defects. *Id.*, ¶ 18. Plaintiff then allegedly notified Defendants JBET and JFB that it was revoking its acceptance of the boiler and demanded that Defendants either replace the boiler or return the purchase price. *Id.*, ¶ 18-19, 21-22. To date, Defendants have allegedly done neither. *Id.*, ¶ 18. As such, Plaintiff claims that ETI breached the contract and its express and implied warranties regarding the boiler and Defendants JBET and JFB are therefore liable. *Id.*, ¶¶ 16-17, 27, 31. Plaintiff also claims that Defendants JBET and JFB are liable for ETI's alleged constructive and actual fraud. *Id.*, ¶¶ 16-17, 27, 33. Plaintiff further alleges that Defendant Tate is liable for its own actual and constructively fraudulent acts. *Id.*, ¶¶ 35-36.

On June 13, 2001, Defendant Tate made a Motion to Transfer Venue to Fairfax County, Virginia. This Motion was overruled on August 21, 2001. On June 19, 2001, Defendant JBET moved for a Bill of Particulars. An Order

sustaining that Motion was entered on August 9, 2001, and Plaintiff filed its Bill of Particulars on December 28, 2001. On June 25, 2001, Defendant JFB filed a Demurrer, alleging that punitive damages cannot be awarded in a breach of contract action. Defendant Tate filed an identical Demurrer on January 31, 2002. On July 16, 2001, Defendant Tate filed a Demurrer with its Answer and Grounds of Defense, alleging that Plaintiff's factual allegations were too vague, indefinite, and conclusory to state a cause of action for actual and/or constructive fraud. On January 2, 2002, Defendant JBET filed a Demurrer to Plaintiff's Bill of Particulars, and also filed a Motion Craving Oyer of relevant portions of the Asset Purchase Agreement (the Agreement) between Defendant JBET and ETI. The Court sustained the Motion Craving Oyer and shall now address the outstanding Demurrers.

### Standard for Demurrer

A demurrer tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action. *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer "admits the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from the alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Roads, Inc. v. City of Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)). Additionally, on demurrer, the court may consider the substantive allegations of the pleading in addition to any accompanying exhibit mentioned in the pleading. *Flippo v. F & L Land Co.*, 241 Va. 15, 16, 400 S.E.2d 156, 156 (1991) (citing Rule 1:4(i)). The Court may consider the pleading, the exhibits and take as true "all fair inferences deducible therefrom." *Palumbo v. Bennett*, 242 Va. 248, 249, 409 S.E.2d 152, 152 (1991). However, "a demurrer does not admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988) (citations omitted).

According to the Rules of the Supreme Court, the pleading "shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." Rule 1:4(d). Therefore, a motion for judgment shall not be dismissed on demurrer if it is written to clearly inform a defendant of the true nature of the claim asserted against him. *Alexander v. Kuykendall*, 192 Va. 8, 14-15, 63 S.E.2d 746, 749 (1951).

Where a motion for judgment contains sufficient allegations of material facts to inform the defendant of the nature of the claim, the pleader need not "descend into statements giving details of proof in order to withstand demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993). If the defendant cannot mistake the true nature of the claim, the court should overrule the demurrer. *Id.* Furthermore, the Virginia Supreme Court has warned the trial courts against incorrectly short-circuiting litigation at the pretrial level by deciding the dispute without permitting the parties to reach a trial on the merits. *Id.*

### *Defendant JFB's Demurrers*

Defendant JFB has filed two separate but identical Demurrers to Plaintiff's claim for punitive damages, alleging that Virginia law does not provide for such damages in breach of contract actions. Defendant JFB's assertion is partially correct, as the Virginia Supreme Court has stated that, although punitive damages are not available in purely ex contractu suits, they may be awarded where an independent, willful tort is alleged and proved. *Kamlar Corp. v. Haley*, 224 Va. 699, 707, 299 S.E.2d 514, 519 (1983) (citing *Goldstein v. Weinburg*, 219 Va. 105, 109, 245 S.E.2d 140, 143 (1978)). However, Plaintiff's Motion for Judgment includes an allegation of actual and/or constructive fraud against Defendant JFB.[1] As such, further analysis is required to determine whether this is the type of action for which punitive damages may be sought.

Virginia law generally does not look favorably upon punitive damages. The Virginia Supreme Court has held that punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct. *Bowers v. Westvaco Corp.*, 244 Va. 139, 150, 419 S.E.2d 661, 668 (1992) (citing *Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 144, 413 S.E.2d 630, 639 (1992)). To recover punitive damages, a plaintiff must present evidence that the defendant's acts were "so willful or wanton as to evince a conscious disregard of the rights of others, as well as malicious conduct. . . ." *Bowers*, 244 Va. at 150, 419 S.E.2d at 668 (1992) (citing *Booth v. Robertson*, 236 Va. 269, 273, 374 S.E.2d 1, 3 (1988)).

In its Motion for Judgment, Plaintiff claims that the allegedly false

---

[1] As Defendant JFB did not demur to Plaintiff's fraud claim, the sufficiency of that claim is not being considered at this time, for this Court may only consider those grounds included in the Demurrer. Va. Code Ann. § 8.01-273 (Michie 2000).

representations of ETI, JFB's predecessor, were "made willfully, maliciously, and with conscious disregard of the [Plaintiff's] rights." Mot. for J., ¶ 33. As was discussed above, a demurrer tests the legal sufficiency of an aggressive pleading. If an aggressive pleading contains sufficient allegations of material facts to inform the defendant of the true nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand a demurrer. *Hunter v. Burroughs*, 123 Va. 113, 129, 96 S.E. 360, 365 (1918). Here, Plaintiff alleges that ETI, the predecessor of Defendant JFB, willfully and maliciously made false representations regarding the suitability of the boiler, and that this was done with a conscious disregard of Plaintiff's rights. As Virginia law allows recovery of punitive damages for willful, independent torts, Plaintiff need not make more specific allegations than those pleaded, for they appear to adequately inform Defendant JFB of the true nature of the claim against him.

Plaintiff may seek punitive damages even though it contracted with ETI and part of its claim is for breach of that contract. As the willful, independent tort of actual fraud was also alleged, Plaintiff is not barred from suing for punitive damages. Therefore, Defendant JFB's Demurrer regarding punitive damages is overruled.

### *Defendant Tate's Demurrer*

Defendant Tate filed a Demurrer, alleging that Plaintiff failed to properly state causes of action for actual and/or constructive fraud against it. Specifically, Defendant Tate argues that Plaintiff's fraud claims were not alleged with sufficient specificity.

In Virginia, actual fraud must be specifically pleaded with facts supporting the allegation. *Potts v. Mathieson Alkali Works*, 165 Va. 196, 220, 181 S.E. 521 (1935). The elements of a cause of action for actual fraud are: (1) a false representation; (2) of a material fact; (3) made intentionally and knowingly; (4) with intent to mislead; (5) reliance on the party misled; and (6) resulting damage to the party misled. *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387 (1994). To state a cause of action for constructive fraud, a plaintiff must properly plead that: (1) the defendant made a false representation of a material fact, innocently or negligently; (2) the defendant intended the plaintiff to rely on it; (3) the plaintiff relied on it; and (4) the plaintiff suffered damage as the result of his reliance. *Economopoulos v. Kolaitis*, 259 Va. 806, 813, 528 S.E.2d 714, 719 (2000).

In the instant case, Plaintiff claims Defendant Tate represented that the boiler was appropriate to provide the mechanical heating in its building. Mot. for J., ¶ 35. Plaintiff states that those representations "were false, were material, were known by Tate to be false when they were made, or were made without knowledge by Tate of whether they were true or false, and were made with the intention that they be relied on, and Plaintiff justifiably relied on the false representations." *Id.* Plaintiff also alleges that Defendant Tate represented that the repairs and replacements it performed on the boiler would rectify all of the problems. *Id.*, ¶ 36. Plaintiff states that those representations:

> Were false, were material, were known by Tate to be false when they were made, due to the fact that Tate knew the Boiler was oversized, or were made without knowledge by Tate of whether they were true or false, and were made with the intention that they be relied on, and Plaintiff justifiably relied on those representations.

*Id.*, ¶ 36. Regarding both representations, Plaintiff also states that the representations "were made willfully, maliciously, and with conscious disregard of the rights of Plaintiff." *Id.*, ¶¶ 35-36.

At first blush, it appears that Plaintiff has properly pleaded causes of action for actual and/or constructive fraud. However, fraud must be pleaded with specificity so that "the defendant may have the opportunity of shaping his defense accordingly." *Mortarino v. Consultant Eng'g Services, Inc.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996). Defendant Tate alleges that this was not done, claiming that Plaintiff did not plead certain necessary facts. Defendant Tate's argument is based on *Tuscarora, Inc. v. B.V.A. Credit Corp.*, 218 Va. 849, 858, 241 S.E.2d 778, 783 (1978), in which the Supreme Court of Virginia held that where the identities of agents or employees who are alleged to have perpetrated the fraud, or the details of the time and place where the fraudulent acts occurred are not revealed in the aggressive pleading, "[t]he allegations are too vague, indefinite, and conclusory to state a cause of action."

In the instant case, Plaintiff has alleged that Defendant Tate made the aforementioned representations. However, corporations cannot make verbal representations; rather, they speak through their agents, officers, and/or employees. Plaintiff did not, in its Motion for Judgment, include the name or names of the person or persons who made the representations, and it likewise omitted the date and time the representations were allegedly made. As such,

under Tuscarora, Plaintiff's allegations regarding Defendant Tate are too vague, indefinite, and conclusory to state a cause of action for fraud.

As Plaintiff has failed to properly plead a cause of action for actual or constructive fraud against Defendant Tate, it is the ruling of this Court that Defendant Tate's Demurrer is sustained, and Defendant Tate is dismissed from the instant action without prejudice.

### Defendant JBET's Demurrer

Defendant JBET filed a Demurrer to Plaintiff's Bill of Particulars, alleging that Plaintiff failed to state a cause of action for successor liability under an implied assumption of liability theory "because the contract on which it relies expressly excludes such a liability." Demurrer, ¶ 3.

"Generally, 'where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor'." *States Roofing Corp. v. Bush Constr. Corp.*, 15 Va. App. 613, 617, 426 S.E.2d 124, 126 (1993) (citations omitted). The Supreme Court of Virginia has stated four exceptions to this general rule:

> In order to hold a purchasing corporation liable for the obligations of the selling corporation, it must appear that (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or *de facto* merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, *or* (4) the transaction is fraudulent in fact.

*Harris v. T.I., Inc.*, 243 Va. 63, 70, 413 S.E.2d 605, 609 (1992) (citations omitted) (emphasis supplied). In the instant case, the first *Harris* exception is alleged, as Plaintiff claims that "Johns Brothers, 'expressly and impliedly assumed' the liabilities of ETI concerning the defective boiler ETI sold and installed at Pembroke Towers." Bill of Particulars, ¶ 12.

Plaintiff alleges numerous facts in support of its argument that Defendant JBET "expressly and implicitly assumed" ETI's liabilities concerning the allegedly defective boiler. Plaintiff first claims that Defendant JBET held out ETI as its commercial division for its HVAC sales and services. *Id.*, ¶ 6. It also claims that a JBET employee performed backflow prevention tests subsequent to the execution of the Asset Purchase Agreement (the Agreement) between Defendant JBET and ETI and that Defendant JBET

assumed all obligations regarding the boiler, including the annual start-up, without invoicing Plaintiff. *Id.*, ¶¶ 7-8, 10. This conduct, argues Plaintiff, "manifested an expressed and implied agreement to assume ETI's contractual liabilities concerning [Plaintiff's] boiler." *Id.*, ¶ 14.

Defendant JBET argues that these allegations should be disregarded based upon the language of the Agreement. The Court has sustained Defendant JBET's Motion Craving Oyer, which effectively attached the relevant portions of the Agreement to the pleading. See *Wards Equipment v. New Holland N. Am.*, 254 Va. 379, 382-83, 493 S.E.2d 516, 518 (1997) (stating that "[w]hen a demurrant's motion craving oyer has been granted, the court in ruling on the demurrer may properly consider the facts alleged as amplified by any written agreement added to the record on the motion."). Therefore, the Court may consider the following portion of the Agreement in determining whether to sustain Defendant JBET's Demurrer:

> "Except for liabilities expressly assumed by Buyer [JBET] as described in Section 4.1 or as otherwise agreed in writing by Buyer, Buyer shall not assume or in any way be liable or responsible for any debts, obligations, or liabilities of either Seller [ETI] or Beatty of any kind whatsoever, whether known or unknown, absolute, accrued, contingent or otherwise, and whether arising before or after the Effective Date, including, without limitation, the following: . . . *any product warranty or liabilities of [ETI] . . . with respect to products or services performed prior to the Closing Date.*

Agreement, ¶ 4.2 (emphasis added).

Despite Defendant JBET's arguments to the contrary, Plaintiff's claim does not appear to be based solely upon the Agreement, but rather on Defendant JBET's post-transaction conduct. The Court of Appeals of Virginia has found that despite prior correspondence indicating no liability assumption, such conduct can manifest an implied agreement by a successor corporation to assume the transferor corporation's liabilities. *States Roofing*, 15 Va. App. at 618, 426 S.E.2d at 127. As such, it appears that Plaintiff has adequately alleged its claim based on the theory of implied assumption. Furthermore, although Defendant JBET argues in its Memorandum in Support of its Demurrer that its post-transaction conduct cannot form the basis for Plaintiff's claim, this was not alleged in the Demurrer. The Court cannot consider this argument because "[n]o grounds other than those stated specifically in the demurrer shall be considered . . . ." Va. Code Ann. § 8.01-273 (Michie 2000).

The Court finds that Plaintiff's pleadings contain sufficient allegations of material facts to inform Defendant JBET of the nature of its claim. Therefore, Defendant JBET's Demurrer is overruled.

For the above-stated reasons, it is the ruling of this Court that the Demurrers of Defendants JFB and JBET are overruled. The Demurrer of Defendant Tate is sustained, and Defendant Tate is dismissed from the instant action without prejudice. It is so ordered.